# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------------X

JEREMY ROENICK,

                                    Plaintiff,

               -against-

SAM FLOOD, NBC SPORTS GROUP, NBC SPORTS
NETWORK, L.P., NBCUNIVERSAL MEDIA, LLC,
COMCAST CORPORATION and JOHN DOES 1-10 (the
name "John Doe" being fictitious as the true
names are presently unknown).

                                Defendants.

--------------------------------------------------------------------
X

Index No.:
Date Index Purchased:
**SUMMONS**

**TO THE ABOVE NAMED DEFENDANTS**:

       YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

       Plaintiff designates New York County as the place of trial pursuant to CPLR § 503(a) on the grounds that a substantial part of the occurrences at issue took place in New York County.

Dated: July 17, 2020

                            **SHEGERIAN & ASSOCIATES, INC.**

                            By *Scott William Clark*
                              Scott William Clark, ESQ.
                              90 Broad Street, Suite 804
                              New York, NY 10004
                              *Attorney for Plaintiff*
                              JERMEY ROENICK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

JEREMY ROENICK,

                                        Plaintiff,

                     -against-

SAM FLOOD, NBC SPORTS GROUP, NBC SPORTS
NETWORK, L.P., NBCUNIVERSAL MEDIA, LLC,
COMCAST CORPORATION and JOHN DOES 1-10 (the
name "John Doe" being fictitious as the true names are
presently unknown).
                                   Defendants.
-------------------------------------------------------------------X

Index No.:
Date Index Purchased:

**COMPLAINT
AND DEMAND
FOR JURY TRIAL**

        Plaintiff JEREMY ROENICK ("Plaintiff" or "ROENICK"), by and through his attorneys,

SHEGERIAN & ASSOCIATES, as and for his Complaint against Defendants SAM FLOOD

("defendant" or "FLOOD"),  NBC SPORTS GROUP, NBC SPORTS NETWORK, L.P.,

NBCUNIVERSAL MEDIA, LLC, COMCAST CORPORATION (the NBC/Comcast entities are

hereinafter referred to as "defendant", "defendants" or "NBC"), states and alleges on information

and belief as follows:

## JURISDICTION AND VENUE

        1.      Jurisdiction is proper because defendants conduct business in New York and the

acts and/or omissions giving rise to the causes of action alleged herein occurred in New York.

        2.      Venue is proper in New York County and this Court under C.P.L.R. §503(a) as a

substantial part of the events or omissions giving rise to this lawsuit occurred in New York

County.

## PRELIMINARY STATEMENT

        3.      This is an action by Plaintiff, JEREMY ROENICK, whose employment with NBC

was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-

economic, direct/compensatory, consequential and punitive damages, pre-judgment interest, and

costs and reasonable attorneys' fees.

-1-

## PARTIES

4.    *Plaintiff:*  Plaintiff ROENICK was, up to the time of his termination, an employee of the defendant NBC.

5.    *Defendants:*  Defendant NBC Sports Group, is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in the County of New York. Defendant's place of business was and is, in the County of New York. Defendant NBC Sports Group at all times mentioned in the complaint was a division of NBCUNIVERSAL MEDIA, LLC. Defendant NBC SPORTS NETWORK, L.P., is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in the County of New York. Defendant's place of business was and is, in the County of New York. On information and belief, Defendant NBC SPORTS NETWORK, L.P. operates NBC Sports, a division of NBCUNIVERSAL MEDIA, LLC. Defendant NBCUNIVERSAL MEDIA, LLC, is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in the County of New York. Defendant's place of business was and is, in the County of New York. Defendant NBCUNIVERSAL MEDIA, LLC is an American mass media conglomerate with corporate headquarters at 30 Rockefeller Plaza, New York, NY 10112. Defendant COMCAST CORPORATION, is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in the County of New York. Defendant's place of business was and is, in the County of New York. On information and belief, Defendant COMCAST CORPORATION owns NBCUNIVERSAL MEDIA, LLC. Defendant FLOOD is and was, at all times mentioned in this Complaint, a manager for NBC.

6.    *John Doe defendants:*  Defendants John Does 1-10 are sued under fictitious names pursuant to CPLR §1024.  Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants.  The named defendants and John Doe defendants are sometimes

-2-

hereafter referred to, collectively and/or individually, as "defendants."

7.      *Relationship of defendants:*  All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under the New York State Human Rights Law and New York City Human Rights Law.  All defendants were responsible for the events and damages alleged herein, including on the following bases:  (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another.  Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist.  Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice.  All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

8.      NBC both directly and indirectly employed Plaintiff as defined in the New York State Human Rights Law, New York City Human Rights Law, New York City Administrative Code and the New York Labor Law.

9.      In addition, defendants NBC and FLOOD compelled, coerced, aided, and abetted the retaliation and discrimination, which is prohibited under New York State Human Rights Law, New York City Human Rights Law and New York Labor Law.

10.     Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## FACTUAL BACKGROUND

11.     *Plaintiff's hiring:* ROENICK, is a now 50-year-old world famous former National Hockey League hockey player who played 18 seasons in the NHL and in nine NHL All-Star

Games. During the course of his career, ROENICK scored 513 goals, and 703 assists for a total of 1,216 points. ROENICK announced his retirement from the NHL on August 6, 2009 and joined NBC Sports shortly thereafter, in 2010, as a studio analyst.

12.     *Plaintiff's job performance:* Plaintiff was a diligent, hardworking employee at NBC until he was terminated on or around February 6, 2020.

13.     *Plaintiff's protected status and activity:* ROENICK was discriminated against and harassed based on his sex/gender and sexual orientation in violation of the New York State and New York City Human Rights Law. ROENICK was also retaliated against for opposing discrimination based on sex/gender and sexual orientation in violation of the New York State and New York City Human Rights Law. Further, ROENICK was discriminated against based on his participation in a political activity in violation of New York Labor Law (NYLL) § 201-D.

14.     *Defendants' adverse employment actions and behavior:* On or around March 24, 2016, ROENICK and NBC entered into an employment agreement. Pursuant to the contract, ROENICK was expected to provide services as a sports announcer and commentator for the Olympic Winter Games in South Korea and NHL games. The agreement contains a "Standard Provisions" section. Pursuant to the Standard Provisions portion of the agreement ROENICK "**shall**" be given written notice and **a reasonable opportunity to cure** a material breach of his agreement. In addition, if ROENICK is accused of engaging in any conduct that "degrades" him or "brings [him] into public disrepute, contempt, scandal or ridicule" he also "**shall be given a reasonable opportunity to cure such Act**" pursuant to his employment agreement. ROENICK was provided with written confirmation of the extension of the contract on March 21, 2018 – extending his contract to June 30, 2020.

15.     Following the signing (and extension) of this contract, ROENICK diligently worked for NBC providing exceptional sports commentary for over three years. However, ROENICK's world was turned upside down after he appeared on a Barstool Sports podcast called "Spittin' Chiclets."

16.     The podcast was recorded in Barstool Sports' Manhattan office on December 17, 2019 and was released on December 18, 2019. During the podcast episode, which is a relaxed conversation between the hosts and guests, ROENICK told a colorful story about him going on a vacation to Portugal with his wife and coworker Kathryn Tappen ("Tappen"), who is a close friend to ROENICK and his family. ROENICK said he joked with fellow vacationers

-4-

that he would "go to bed" with his wife and Tappen but also clarified during the podcast that, in reality, "it is never going to happen." ROENICK also applauded Tappen during the podcast about her career in a "male dominated" industry, describing her as one of "the most professional sports personalities that I know," "as prepared as anyone" and that there is "nobody that wants it more" (to be successful in the business) and that "she is true blue one of my favorite people in the world, and I'm lucky that I'm next to her, and she's a good friend of mine." The host at one point attempts to criticize Tappen by saying "she butchers names" and ROENICK again stands up for her saying "I still butcher names" he then says "Kathryn Tappen and I when we get on the show, one of us will say something that is so wrong and we'll laugh."

17.     Following the airing of this podcast, ROENICK's boss, FLOOD, texted him saying "you went too far. You may have crossed a line that there was no return from. I'm really upset, and I need to take a couple days to figure out my next move." A few days later, on or around December 24, 2019, NBC made a press release stating that ROENICK was suspended indefinitely without pay. ROENICK was never even told about the press release before it was made public. At the time of the suspension, ROENICK was not aware of anyone complaining about the podcast other than FLOOD. After his suspension, FLOOD said "we will reconvene in February" to discuss ROENICK's future at NBC. After ROENICK's suspension, Tappen told ROENICK that she was not offended by his comments but was pressured by both NBC and a woman's rights organization to make a statement condemning ROENICK's comments. In fact, Tappen even joked about the comments to ROENICK's wife via text after the podcast aired and ROENICK even helped Tappen draft the statement she was pressured to write, condemning what he said during the podcast but clarifying that her and ROENICK were friends, and remained friends.

18.     Following his suspension, on January 11, 2020, ROENICK issued a video message on his twitter account apologizing for his comments. Specifically, ROENICK states, "I want to take this opportunity to apologize to NBC Sports, Kathryn Tappen, Patrick Sharp, Anson Carter, for some insensitive comments I made on a recent podcast. I never meant to offend anyone, and I definitely went too far, and for that, I deeply regret it." He adds, "I've called everybody involved and I'm so thankful for their loving and gracious acceptance of my apology, and that includes my family and friends." The message and apology was thoughtfully crafted by ROENICK himself, without consultation, approval, or prompting from NBC.

-5-

19.     Despite his public apology, FLOOD called ROENICK on February 6, 2020 to terminate his employment. FLOOD said during the phone call "I won't be able to bring you back to NBC for violating their Section 16 provision, that you made inappropriate comments about fellow coworkers." FLOOD did not give any additional explanation for the termination. ROENICK protested that none of the people he discussed on the podcast took any offense to his comments, that it was unprofessional to issue a press release immediately following his suspension and that the whole situation could have been resolved by other means. FLOOD responded that ROENICK was in this situation because of his own words to which ROENICK responded that no one had an issue with the incident except for FLOOD. FLOOD responded that some people in upper management also had an issue with the comment and that it was "unfortunate" that NBC could not bring ROENICK back. The termination was executed without NBC and FLOOD offering ROENICK an opportunity to cure the act NBC and FLOOD deemed sufficient for termination.

20.     Throughout his tenure, ROENICK was, in fact, Tappen's biggest supporter at NBC and often provided her with comfort and support during difficult times on the job. FLOOD constantly snidely criticized Tappen for her performance as a commentator and broadcaster when she, for example, would accidentally mispronounce the name of a player or coach. After FLOOD would send these critical texts and messages to Tappen it was always ROENICK who selflessly comforted her, told her to keep her head up and stay confident, that she was great at her job and to not listen to FLOOD's constant critiques. ROENICK would push back and complain to FLOOD about FLOOD's discriminatory and harassing statements made to Tappen based on Tappen's sex/gender. Shortly after ROENICK made these complaints, which irritated Flood, he was suspended and ultimately terminated

21.     It must be noted that ROENICK contract states that ROENICK *shall* be given the opportunity to **cure** any material breach of the agreement or any situation involving allegedly immoral action on ROENICK's part. ROENICK was never given the opportunity to cure the situation and was simply outright terminated. NBC could have pursued numerous avenues to allow ROENICK to cure the situation. For example:

   a.  ROENICK could have been limited to work duties where he would have not had to interact with the coworkers he discussed during the podcast. For instance, ROENICK could have worked on-site at NHL games interviewing players and

-6-

coaches, interacting with fans and providing commentary in-game.

    b.   ROENICK's suspension could have been continued for a longer period of time, allowing ROENICK to reflect on the impropriety of his actions, without ultimately terminating his employment.

    c.   ROENICK could have been provided counseling or training on conduct in the workplace in order to ensure he learned from his mistakes and that this type of conduct would not happen in the future.

    d.   ROENICK could have made a donation to charities that empower women in the workplace or attempt to limit harassment/inappropriate conduct in the workplace.

    e.   ROENICK could have released a public statement, explaining why the podcast comments were inappropriate and steps he intends to take to make amends to his coworkers and the community at large to remedy the situation.

    f.   ROENICK could have released a joint public statement with Tappen, to acknowledge the situation but also use it as a learning experience for others.

    22.    Each of the above options, a combination of these options, or some alternative would have allowed NBC to send the message to the community at large that his comments were inappropriate and could not be tolerated while not ruining ROENICK's post-playing career.

    23.    NBC's termination of ROENICK is especially troubling when considered in the context of the treatment of other NBC commentators and personalities. On July 2, 2020 NBC Skating commentators Tara Lipinski and Johnny Weir participated in a vulgar spoof of the 2018 US national figure skating champion and Olympic bronze medalist Bradie Tennell during which Lipinski and Weir used a **vulgar term for a woman's groin and joked about a sexual affair**. However, to date, there has not been any remedial action taken against Lipinski or Weir. Attached hereto as **Exhibit A** is a copy of a report from USA Today on the incident.

    24.    In addition, during the 2018 Olympic games, ROENICK after hearing colorful commentary regarding the body parts of ice skaters from analyst/commentator Johnny Weir asked FLOOD about the comments. FLOOD said "he is gay and can say whatever" in response to ROENICK's question.

    25.    *Direct/Compensatory Damages:* As a result of NBC's conduct and breach of contract ROENICK has lost salary, wages, benefits and other forms of compensation, in a sum to

-7-

be proven at trial.

26. *Consequential Damages:* As a result of NBC's breach of contract and conduct ROENICK has suffered substantial foreseeable consequential damages including future lost wages, reputational harm, loss of endorsement agreements and harm to existing businesses, in a sum to be proven at trial.

27. *Economic damages:* As a consequence of defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

28. *Non-economic damages:* As a consequence of defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

29. *Punitive damages:* Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

30. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

31. A copy of this Complaint will be served on or around July 17th 2020, to the New York State Division of Human Rights, the New York State Department of Labor, the New York City Commission on Human Rights, the City of New York Corporation Counsel, and the Office of Attorney General thereby satisfying the notice requirements of the New York State Human Rights Law, the New York City Human Rights Law, and N.Y. Civ. Rights § 40-d.

## FIRST CAUSE OF ACTION

### Breach of Contract (Employment Agreement)

### —Against NBC and Does 1-10

32. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

33. "The elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to

-8-

perform, [and] (4) resulting damage." 2 Leon C. Lazer, et al., *New York Pattern Jury Instructions – Civil* § 4.1, at 594 (2d ed. 2006).

34.     ROENICK entered into a written employment agreement with NBC on March 24, 2016. The employment agreement included consideration on both sides, with ROENICK agreeing to provide sports announcer and commentating services for NBC while NBC agreed to compensate ROENICK for the services that he rendered. ROENICK was provided with written confirmation of the extension of the contract on March 21, 2018 – extending his contract to June 30, 2020.

35.     ROENICK admirably performed pursuant to the contract as he provided sports announcing and commentating services under the terms of the agreement on every occasion requested by NBC.

36.     However, after ROENICK's appearance on the "Spittin Chiclets" podcast, NBC breached the employment agreement by not allowing ROENICK an opportunity to "cure" any alleged breach of his employment agreement. The employment agreement contains a "Standard Provisions" section. Pursuant to the Standard Provisions portion of the agreement ROENICK "**shall**" be given written notice and **a reasonable opportunity to cure** a material breach of his agreement. In addition, if ROENICK is accused of engaging in any conduct that "degrades" him or "brings [him] into public disrepute, contempt, scandal or ridicule" he also "**shall be given a reasonable opportunity to cure such Act**."

37.     As is described above in paragraph 21, a cure was certainly possible in ROENICK's situation and NBC's suspension and termination of ROENICK without providing him with an opportunity to "cure" is a violation of his contractual rights under the employment agreement.

38.     Further, as is described above in paragraph 23, NBC has not engaged in remedial action against other NBC employees allegedly involved in immoral conduct, while ROENICK was suspended and terminated despite having a contractual right to "cure" any alleged breach of his employment agreement. NBC's tolerance of other employees' alleged immoral public statements and acts shows that NBC certainly could have allowed ROENICK an opportunity to "cure" as is required by his employment contract.

39.     As a result of NBC's breach of contract, ROENICK is entitled to recover direct/compensatory damages as well as consequential damages.

40. *Direct/Compensatory Damages:* As a result of NBC's breach of contract, ROENICK experienced lost salary (his salary from the time he was suspended without pay on December 24, 2019 to the end of his 2020 cycle). In addition, pursuant to his contract ROENICK was entitled to additional compensation in the amount of $4,500 per event performed if ROENICK performed over 110 events in any given year. Events are defined as NHL games including exhibition, regular season and post-season games and related studio shows. As such, had ROENICK completed more than 110 events in a contract year he would have been entitled to additional compensation. This is not an exhaustive list of ROENICK's direct/compensatory damages.

41. *Consequential Damages:* As a result of NBC's breach of contract ROENICK has suffered substantial consequential damages. It was reasonably foreseeable when ROENICK was fired from NBC as a result of his comments on the "Spittin' Chiclets" podcast that he would have been unable to find work at any media company for the foreseeable future. ROENICK now has a permanent black mark on his career. As such, ROENICK will experience lost wages, compensation and employment benefits for the foreseeable future.

42. In addition, ROENICK has suffered substantial reputational harm as a foreseeable result of NBC's breach of contract (by terminating ROENICK without an opportunity to cure). Before his suspension and termination, ROENICK had a contract with "Kraft Hockeyville" valued at $50,000 per year, with Molson Coors Beverage Company valued at $100,000 per year and Urbal Active valued at $75,000 per year. Each of these contracts were cancelled after ROENICK's suspension and termination. Further, ROENICK normally charges approximately $10,000 for public appearances. In 2019, ROENICK had approximately 15 appearances. However, since his suspension and termination (and before the outbreak of the COVID-19 pandemic) he had multiple events cancel on him (including an event with Thuzio in January). As such, ROENICK will lose substantial compensation in cancelled personal appearance fees per year due to his unlawful suspension and termination. Sadly, the JR Hockey School, through which ROENICK provides instruction to young hockey players, has also seen a substantial financial hit from his suspension and termination. ROENICK estimates that his revenues are down at least $70,000 due to less interest in his school since his termination (which also occurred before the COVID-19 outbreak). As can be seen from the above, ROENICK has suffered substantial foreseeable reputational harm because NBC suspended him and terminated his employment.

-10-

ROENICK is forever branded as someone who engaged in immoral office conduct but has not had any opportunity to address the situation in a meaningful and fair manner. The above is not an exhaustive list of the consequential damages that ROENICK has experienced as a result of NBC's breach of contract.

43.     In conclusion, as a result of NBC's breach of contract ROENICK is entitled to recover for the direct/compensatory and consequential damages he has sustained.

44.     Plaintiff seeks attorneys' fees under this cause of action.

### SECOND CAUSE OF ACTION
**Breach of Express Oral Contract Not to**
**Terminate/Constructively Terminate Employment Without**
**Good Cause — Against NBC and Does 1-10**

45.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

46.     Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause. Plaintiff and defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of him under the agreement by performing his job in an exemplary manner.

47.     Repeatedly, throughout his employment ROENICK was told by his supervisors that he would be at NBC for a long time, that he had nothing to worry about as far as his job was concerned and that he was expected to be pivotal at NBC for years to come. In fact, in the weeks leading up to his appearance on the "Spittin Chiclets" podcast, ROENICK was also in discussions with Flood to extend ROENICK's contract by another 12-month term. By making these repeated assurances to ROENICK and implying that he would be around at NBC for years to come, Defendants entered an express/implied contract not to terminate him except for good cause.

48.     Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with him.

49.     As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings, benefits, direct/compensatory damages and consequential damages, in a sum according to proof.

-11-

50.     Plaintiff seeks attorneys' fees under this cause of action.

### THIRD CAUSE OF ACTION

**Breach of Implied-in-Fact Contract Not to**

**Terminate/Constructively Terminate Employment Without**

**Good Cause – Against NBC and Does 1-10**

51.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

52.     On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause.  This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

53.     Repeatedly, throughout his employment ROENICK was told by his supervisors that he would be at NBC for a long time, that he had nothing to worry about as far as his job was concerned and that he was expected to be pivotal at NBC for years to come. In fact, in the weeks leading up to his appearance on the "Spittin Chiclets" podcast, ROENICK was also in discussions with Flood to extend ROENICK's contract by another 12-month term. By making these repeated assurances to ROENICK and implying that he would be around at NBC for years to come, Defendants entered an express/implied contract not to terminate him except for good cause.

54.     Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

55.     As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate/constructively terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings, benefits, direct/compensatory damages and consequential damages, in a sum according to proof.

56.     Plaintiff seeks attorneys' fees under this cause of action.

-12-

## FOURTH CAUSE OF ACTION

### Violation of New York State Human Rights Law For Sex and
### Sexual Orientation Discrimination - Against All Defendants
### and John Does 1-10

57.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

58.     The New York Executive Law §296(1)(a) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or licensed agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse or hire or employ or to bar or to discharge from employment such individual in compensation or in terms, condition or privileges of employment."

59.     Defendants engaged in an unlawful discriminatory practice in violation of the New York State Executive Law §296(1)(a) by creating and maintaining discriminatory working conditions and constructively terminating Plaintiff's employment because of his sex and sexual orientation.

60.     Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in violation of his civil rights and/or to harassment.

61.     Plaintiff was a member of a protected class (based on his sex and sexual orientation), was qualified to perform his job (as he did perform his job in an exemplary manner) yet he was subjected to repeated unequal treatment, harassment and ultimately terminated based on his membership in protected classes.

62.     Other similarly situated female employees who engaged in similar conduct to ROENICK, such as Tara Lipinski (**Exhibit A**), have not been subjected to suspension or termination as was ROENICK.

63.     Further, ROENICK was told by FLOOD that a similarly situated gay employee, Johnny Weir, "can say whatever" and engaged in similar conduct to ROENICK (**Exhibit A**) but was not disciplined, while ROENICK was terminated for his comments on the "Spittin Chiclets" podcast.

64.     As a proximate result of defendants' willful, knowing, and intentional discrimi-

-13-

nation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

65.     As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

66.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

67.     Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

## FIFTH CAUSE OF ACTION

### Violation of New York City Human Rights Law For Gender and Sexual Orientation Discrimination/Disparate Treatment - Against All Defendants, and John Does 1-10

68.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

69.     The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

70.     Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of his gender and sexual orientation.

71.     Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in violation of his civil rights and/or to harassment.

-14-

72.    Plaintiff was a member of a protected class (based on his gender and sexual orientation), was qualified to perform his job (as he did perform his job in an exemplary manner) yet she was subjected to repeated harassment, unequal treatment and ultimately terminated based on his membership in protected classes.

73.    Other similarly situated female employees who engaged in similar conduct to ROENICK, such as Tara Lipinski (**Exhibit A**), have not been subjected to suspension or termination as was ROENICK.

74.    Further, ROENICK was told by FLOOD that a similarly situated gay employee, Johnny Weir, "can say whatever" and engaged in similar conduct to ROENICK (**Exhibit A**) but was not disciplined, while ROENICK was terminated for his comments on the "Spittin Chiclets" podcast.

75.    As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

76.    As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

77.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

78.    Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

## SIXTH CAUSE OF ACTION
### Violation of New York State Human Rights Law For Hostile
### Work Environment - Against All Defendants, and John Does
### 1-10

79.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

80.    Defendants' conduct, as alleged, violated the New York State Human Rights Law,

-15-

including but not limited to, N.Y. Exec. Law § 296. Defendants committed unlawful employment practices, including but not limited to, the following bases for liability:

- Taking adverse employment actions against the Plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's sex, sexual orientation, and/or other good faith complaints in violation of N.Y. Exec. Law § 296 of the New York State Human Rights Law;

- Harassing Plaintiff and/or creating a hostile work environment by, including but not limited to, issuing public statements about the suspension and termination of ROENICK's employment and refusing to allow ROENICK to cure any perceived conduct issue related to ROENICK's actions;

- Retaliating against Plaintiff for good faith complaints, in violation of the New York State Human Rights Law including, but not limited to, N.Y. Exec. Law § 296;

- Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on, including but not limited to, Plaintiff's complaints of discrimination and harassment, and/or other protected characteristic or activity in violation of the New York State Human Rights Law including, but not limited to, N.Y. Exec. Law § 296;

- Plaintiff's good faith complaints protected by N.Y. Exec. Law § 296 of the New York State Human Rights Law, were motivating factors in defendants' decision to terminate the Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse job actions against Plaintiff.

81.    Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in his civil rights and/or to harassment.

82.    As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

83.    As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional

-16-

distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

84. Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

85. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

86. Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

## SEVENTH CAUSE OF ACTION

### Violation of New York City Human Rights Law For Hostile
### Work Environment - Against All Defendants, and John Does
### 1-10

87. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

88. Defendants' conduct, as alleged, violated the New York City Human Rights Law, including but not limited to, §8-107 and/or §8-107.1 of the New York City Administrative Code. Defendants committed unlawful employment practices, including but not limited to the following bases for liability:

- Taking adverse employment actions against the Plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's sex, and/or other good faith complaints in violation of the New York City Human Rights Law, including but not limited to, §8-107 and/or §8-107.1 of the New York City Administrative Code;

- Harassing Plaintiff and/or creating a hostile work environment by, including but not limited to, issuing public statements about the suspension and termination of ROENICK's employment and refusing to allow ROENICK to cure any perceived conduct issue related to ROENICK's actions;

-17-

- Retaliating against Plaintiff for good faith complaints, in violation of the New York City Human Rights Law, including but not limited to, §8-107 and/or §8-107.1 of the New York City Administrative Code;

- Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on, including but not limited to, Plaintiff's complaints of discrimination and harassment, and/or other protected characteristic or in violation of §8-107 and/or §8-107.1 of the New York City Administrative Code;

- Plaintiff's other good faith complaints protected by the New York City Human Rights Law, including but not limited to, §8-107 and/or §8-107.1 of the New York City Administrative Code, were motivating factors in defendants' decision to terminate the Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse job actions against Plaintiff.

- Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in his civil rights and/or to harassment.

89. As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

90. As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

91. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

92. Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

-18-

## EIGHTH CAUSE OF ACTION

**Violation of New York State Human Rights Law - Retaliation**

**for Opposing Discrimination and Harassment Based on Sex**

**and Sexual Orientation - Against All Defendants, and John**

**Does 1-10**

93.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

94.     Defendants' conduct, as alleged, violated the New York State Human Rights Law, specifically N.Y. Exec. Law sections 296(1)(e) and 296(7), and defendants committed unlawful employment practices, including by the following, separate bases for liability: retaliating against Plaintiff by reprimanding him, harassing him, treating him worse than his coworkers and ultimately terminating his employment because of his sex, for opposing discrimination based on sex, for seeking to exercise rights guaranteed under the New York State Human Rights Law and/or for opposing defendants' failure to provide such rights, including the right to be free from discrimination and harassment based on sex and sexual orientation in violation of New York State Human Rights Law sections 296(1)(e) and 296(7).

95.     Plaintiff is entitled to all available compensation under the New York State Human Rights Law.

96.     Under the New York State Human Rights Law, as a proximate result of defendants' unlawful conduct, Plaintiff is entitled to compensatory damages in an amount according to proof.

97.     Under the New York State Human Rights Law, as a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, in an amount according to proof.

98.     Under the New York State Human Rights Law, as a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

99.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an

-19-

amount according to proof.

100.     Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

## NINTH CAUSE OF ACTION

### Violation of New York City Human Rights Law - Retaliation
### for Opposing Harassment and Discrimination Based on
### Gender and Sexual Orientation - Against All Defendants, and
### John Does 1-10

101.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

102.     Defendants' conduct, as alleged, violated the New York City Human Rights Law, specifically section 8-107(7) of the New York City Administrative Code, and defendants committed unlawful employment practices, including by the following, separate bases for liability:

- Retaliating against Plaintiff by reprimanding him, harassing him, treating him worse than his coworkers and ultimately terminating his employment because of his sex, for opposing discrimination based on sex and sexual orientation, for seeking to exercise rights guaranteed under the New York City Human Rights Law and/or for opposing defendants' failure to provide such rights, including the right to be free from discrimination and harassment based on gender in violation of section 8-107(7) of the New York City Administrative Code;

- The above actions and acts were reasonably likely to deter a person from engaging in a protected activity, in violation of section 8-107(7) of the New York City Administrative Code.

103.     As a proximate result of defendants' willful, knowing, and intentional retaliation (which was committed with discriminatory intent) against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

104.     As a proximate result of defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and

physical and mental pain and anguish, all to his damage in a sum according to proof.

105.     As a proximate result of defendants' creation of a hostile work environment based on discrimination that harmed Plaintiff, Plaintiff is entitled to compensatory damages.

106.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

107.     Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against defendants.

## TENTH CAUSE OF ACTION

**Violation of New York State Human Rights Law For**

**Aiding, Abetting, Inciting, Compelling and/or Coercing**

**Forbidden Acts—Against Defendant Flood and Does 1-10**

108.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

109.     Defendants' actions set forth above violate the New York State Human Rights Law, specifically N.Y. Exec. Law section 296(6), which sets forth:

> It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the act forbidden under this chapter, or to attempt to do so.

110.     By reasons of the foregoing, Defendants created a hostile work environment that was severe and pervasive, harassed, discriminated and retaliated against plaintiff based on his sex and sexual orientation.

111.     The discriminatory, harassing, reckless, wrongful, willful, and malicious treatment of the Plaintiff by defendants was aided and abetted by defendants FLOOD and the denial of equal opportunity, terms, conditions, and perquisites of employment towards Plaintiff were in violation thereof. FLOOD individually discriminated against plaintiff, retaliated against plaintiff for making protected complaints and furthered the discrimination/retaliation/harassment of their employer NBC.

112.     As a proximate result of the individual defendants' willful, knowing, and

intentional aiding, abetting, inciting, and/or coercing of the acts forbidden in this article against Plaintiff, Plaintiff is entitled to recover for all damages allowed under the New York State Human Rights Law.

113.    Under the New York State Human Rights Law, as a proximate result of defendants' unlawful conduct, Plaintiff is entitled to compensatory damages in an amount according to proof.

114.    Under the New York State Human Rights Law, as a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits in an amount according to proof.

115.    Under the New York State Human Rights Law, as a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

116.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

117.    Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

## ELEVENTH CAUSE OF ACTION

### Violation of New York City Human Rights Law For Aiding, Abetting, Inciting, Compelling, Coercing Forbidden Acts and Interfering with Protected Rights—Against Defendant FLOOD and Does 1-10

118.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

119.    Defendants' actions set forth above violate the New York City Administrative Code §8-107 (6), which sets forth:

It shall be unlawful discriminatory practice for any person to aid, abet, incite,

-22-

compel or coerce the doing of any of the act forbidden under this chapter, or to attempt to do so.

120.    Defendants' actions set forth above also violate the New York City Administrative Code §8-107(19), which sets forth:

It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of such person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

121.    By reasons of the foregoing, Defendants created a hostile work environment that was severe and pervasive, harassed, discriminated and retaliated against plaintiff based on his gender and sexual orientation.

122.    The discriminatory, harassing, reckless, wrongful, willful, and malicious treatment of the Plaintiff by defendants was aided and abetted by defendant FLOOD, and the denial of equal opportunity, terms, conditions, and perquisites of employment towards Plaintiff were in violation thereof. FLOOD individually harassed Plaintiff, discriminated against plaintiff, retaliated against plaintiff for making protected complaints and furthered the discrimination/retaliation/harassment of their employer NBC. FLOOD also interfered with Plaintiff's protected rights by, including but not limited to, retaliating against him for opposing the individually named defendants' discriminatory, retaliatory and harassing behavior.

123.    As a proximate result of defendants' willful, knowing, and intentional retaliation against Plaintiff (and interference with Plaintiff's protected rights), Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

124.    As a proximate result of defendants' willful, knowing, and intentional discrimi-nation against Plaintiff (and interference with Plaintiff's protected rights), Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

125.    As a proximate result of defendants' willful, knowing, and intentional retaliation which was committed with discriminatory intent (and interference with Plaintiff's protected rights), Plaintiff has sustained and continues to sustain substantial losses of earnings and other

-23-

employment benefits.

126.     As a proximate result of defendants' willful, knowing, and intentional retaliation against Plaintiff (and interference with Plaintiff's protected rights), Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

127.     As a proximate result of defendants' creation of a hostile work environment based on discrimination that harmed Plaintiff (and interference with Plaintiff's protected rights), Plaintiff is entitled to compensatory damages.

128.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

129.     Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against defendants.

## TWELFTH CAUSE OF ACTION
### Violation of New York Labor Law § 201-D – Discrimination
### For Engagement in Political Activities
### — Against NBC and Does 1-10

130.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

131.     Pursuant to New York Labor Law §201 – D (2) it is "unlawful for any employer or employment agency to refuse to hire, employ or license, or discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions and privileges of employment because of: (a) an individuals political activities outside of working hours, off of the employer's premises and without use of the employer's equipment or property."

132.     If an employer violates New York Labor Law §201 – D, "an aggrieved individual may commence an action for equitable relief and damages."  New York Labor Law § 201 – D(7)(b).

133.     In 2016 ROENICK asked Flood for permission to speak at the Republic National Convention on behalf of President Donald Trump. FLOOD responded by saying, "I'm not saying

what you can do. You know who you work for. You work for NBC. That would not look good on your NBC record." After this conversation with FLOOD, ROENICK noticed FLOOD started to be increasingly critical of ROENICK and his political connections/affiliations. After ROENICK's initial request in 2016, FLOOD made constant derogatory comments about ROENICK's relationship with the President saying things like "your boy is messing up this country", "I can't believe you are friends with him" and "I can't believe you are friends with a guy like that." The most recent of these comments was made just weeks before ROENICK's appearance on the "Spittin' Chiclets" podcast and his subsequent suspension and termination.

134.     On information and belief, ROENICK's outspoken support of President Trump and his desire to participate in political activities outside of his work at NBC on behalf of President Trump directly caused and contributed to plaintiff's suspension and termination in violation of New York Labor Law § 201-D.

135.     As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

136.     As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

137.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

138.     Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, JEREMY ROENICK, respectfully requests that this Court grant judgment, in an amount exceeding the jurisdictional limits of all lower courts of the State of New York, as follows:

For an award of damages against defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and economic damages;

-25-

For an award of damages against defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and compensatory damages, including compensation for Plaintiff's emotional distress;

For direct/compensatory damages according to proof;

For consequential damages according to proof;

For general and special damages according to proof;

For pre-judgment and post-judgment interest on all damages awarded;

For reasonable attorneys' fees;

For costs of suit incurred;

For an award of lost wages in an amount to be determined at trial;

For an award of punitive damages in an amount to be determined at trial;

For an award of pre-judgment interest on all amounts due;

For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  July 17, 2020                     SHEGERIAN & ASSOCIATES

By:  *Scott William Clark*
Scott William Clark, Esq.
*Attorneys for Plaintiff*
JEREMY ROENICK
90 Broad Street, Suite 804
New York, NY 10004
Tel.: (212) 257-8883
Fax: (212) 257- 8883
Email: sclark@shegerianlaw.com

-26-

# EXHIBIT A

7/6/2020                                    Tara Lipinski, Johnny Weir use vulgar term in spoof of Olympian



# NBC skating commentators Tara Lipinski, Johnny Weir participate in vulgar video spoof of U.S. Olympian

**Christine Brennan** USA TODAY

Published 9:19 p.m. ET Jul. 2, 2020 | **Updated 3:50 p.m. ET Jul. 3, 2020**

NBC Sports commentators Tara Lipinski and Johnny Weir participated in a video spoof of 2018 U.S. national figure skating champion and Olympic team bronze medalist Bradie Tennell last month in which a vulgar term for a woman's groin was used, as well as a joke about a sexual affair.

U.S. Figure Skating, which has been rocked by a series of high-profile allegations of sexual abuse over the past year and a half, issued a statement Thursday evening saying that it "does not condone the descriptions used in this parody," according to spokesperson Barbara Reichert.

NBC Sports spokesperson Dan Masonson offered a more muted response, emphasizing that it was a spoof, adding, "In retrospect, this sketch could have been completed with generic footage." The sketch used video of Tennell competing at the 2018 Winter Olympic Games.

NBC did not mention Tennell in its statement. There was no comment from Lipinski or Weir through NBC Sports.

Tennell could not be reached for comment Thursday evening, said her publicist Lynn Plage, who also said she and Tennell's agent, Yuki Saegusa, were unaware of the video until receiving a call about it from USA TODAY Sports.

In March 2019, the U.S. Center for SafeSport delivered a chilling assessment of sexual abuse in American skating, saying it discovered "a culture in figure skating that allowed grooming and abuse to go unchecked for too long."

Nancy Hogshead-Makar, Olympic gold medalist and CEO of the legal advocacy non-profit Champion Women, said incidents such as this contribute to the problem.

"U.S. Figure Skating has been told pointedly that it has a culture problem, one that makes their athletes uniquely vulnerable to sexual abuse," she said. "This clip shows skating's sport-insiders demeaning one of their best athletes by sexualizing her.

"Sadly, we know this happens to girls and women as a regular part of their lives, but the expectation should be that women's professional work, their roles as elite athletes, should be off limits, and particularly among sport-members. When boundaries aren't enforced – or even recognized as violations – it sets up the athlete to be abused. This isn't how to treat one of America's best athletes and isn't how to treat colleagues."

In the promotional video for The At-Home Variety Show on the Peacock streaming service, Lipinski and Weir are joined on a video call by "Pitch Perfect" actors Elizabeth Banks and John Michael Higgins.

After Lipinski, the 1998 Olympic gold medalist, introduces footage of Tennell from the Olympics, she says, "Nice camel spin into a toe loop," even though Tennell does neither a camel spin nor a toe loop in the footage.

Higgins replies: "Yes, the camel toe. Gail's very familiar with that one."

Banks, who plays "Pitch Perfect's" Gail, says, "I am, I am."

Moments later, Weir jokes, "I'm really hoping we get to see her quads during this program." Tennell attempted no quadruple jumps at the Olympics.

Banks replies, "Ah, easy, Johnny, your wife's sitting right there."

"Gail, we're co-workers and besties," Weir says.

"Oh, I see," Banks says. "Office romance, gotcha."

Lipinski posted the video on her Instagram account May 29. Not long after the publication of this story, the video was taken down from her account and from wherever it was previously posted, according to an NBC Sports spokesperson.