**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEREMY ROENICK, | |
| Plaintiff, | |
| - against - | No. 20 Civ. 7213 (JPC) |
| | **ECF CASE** |
| SAM FLOOD, NBC SPORTS GROUP, NBC SPORTS NETWORK, L.P., NBC UNIVERSAL MEDIA, LLC, COMCAST CORPORATION, AND JOHN DOES 1-10, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT IN PART**

PROSKAUER ROSE LLP

Lawrence R. Sandak
Melissa A. Overbeck
Eleven Times Square
New York, New York 10036
(T) 212-969-3000
(F) 212-969-2900
lsandak@proskauer.com
moverbeck@proskauer.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ALLEGATIONS IN THE COMPLAINT ................................................................................. 3

LEGAL ARGUMENT ............................................................................................................... 7

   I. ROENICK'S UTTERLY IMPLAUSIBLE AND LEGALLY INSUFFICIENT CLAMS FAIL TO SATISFY MINIMUM PLEADING REQUIREMENTS ................... 7

   II. ROENICK CANNOT STATE A PLAUSIBLE DISCRIMINATION CLAIM ............... 8

   III. ROENICK ALLEGES NO FACTS TO SUPPORT HIS HOSTILE WORK ENVIRONMENT CLAIMS ........................................................................................... 13

   IV. ROENICK'S AIDING AND ABETTING CLAIMS, DERIVATIVE OF HIS NON-VIABLE DISCRIMINATION CLAIMS, MUST BE DISMISSED ..................... 17

   V. ROENICK'S POLITICAL DISCRIMINATION CLAIM IS FATALLY FLAWED ......................................................................................................................... 18

   VI. ROENICK FAILS TO STATE A CLAIM AGAINST COMCAST OR NBCSN ........... 21

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

C<span>ASES</span>

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)...............................................................15

*Anderson v. Davis Polk & Wardwell LLP*,
850 F. Supp. 2d 392 (S.D.N.Y. 2012).................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................... *passim*

*Atuahene v. City of Hartford*,
10 F. App'x. 33 (2d Cir. 2001) .....................................................23, 24

*Banks v Correctional Servs. Corp.*,
475 F. Supp. 2d 189 (E.D.N.Y. 2007) ................................................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................7, 8, 9, 22

*Bermudez v. City of New York*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011)................................................14

*Bliss v MXK Rest. Corp.*,
220 F. Supp. 3d 419 (S.D.N.Y. 2016).................................................9

*Brown v. Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014).............................................................23

*Carter v. Verizon*,
No. 13 Civ. 7579, 2015 WL 247344 (S.D.N.Y. Jan. 20, 2015)............16

*Chambers v Time Warner, Inc.*,
282 F.3d 147 (2d Cir 2002)..............................................................4

*Clark Cnty. Sch. Dist. v Breeden*,
532 U.S. 268 (2001).........................................................................20

*Cook v. Arrowsmith Shelburne, Inc.*,
69 F.3d 1235 (2d Cir. 1995).............................................................23

*Culmone-Simeti v. N.Y.C. Dep't of Educ.*,
No. 17 Civ. 2313, 2018 WL 3384437 (S.D.N.Y. July 11, 2018) ...........14

*Daley v Related Cos., Inc.*,
    198 A.D.2d 118 (1st Dep't 1993) ........................................................22

*Edgreen v Learjet Corp.*,
    180 A.D.2d 562 (1st Dep't 1992) ........................................................22

*Esposito v Altria Grp., Inc.*,
    67 A.D.3d 499 (1st Dep't 2009) ........................................................24

*Fattoruso v. Hilton Grand Vacations Co.*,
    873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).......................14

*Feliciano v. City of New York*,
    No. 14 Civ. 6751, 2015 WL 4393163 (S.D.N.Y. July 15, 2015) ........................................16

*Graham v Long Is. R.R.*,
    230 F.3d 34 (2d Cir 2000).........................................................9, 11

*Griffin v. Sirva, Inc.*,
    291 F. Supp.3d 245 (E.D.N.Y. 2018) ........................................................17

*Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*,
    No. 16 Civ. 4897, 2017 WL 2258374 (S.D.N.Y. May 22, 2017).......................................13

*Hamzaraj v. ABM Janitorial Ne. Inc.*,
    No. 15 Civ. 2030, 2016 WL 3571387 (S.D.N.Y. June 27, 2016).......................................4

*Hedges v. Town of Madison*,
    456 F. App'x. 22 (2d Cir. 2012) ........................................................9

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ........................................................4

*Isbell v City of New York*,
    316 F. Supp. 3d 571 (S.D.N.Y. 2018).......................................................14

*Jackson v. Cnty. of Rockland*,
    450 F. App'x 15 (2d Cir. 2011) ........................................................9

*Johnson v. Strive E. Harlem Emp't Grp.*,
    990 F. Supp. 2d 435 (S.D.N.Y. 2014).......................................................13

*Juhua Han v. Kuni's Corp.*,
    No. 19 Civ. 6265, 2020 WL 2614726 (S.D.N.Y. May 22, 2020).......................................23

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
    120 A.D.3d 18 (1st Dep't 2014) ........................................................16

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015)................................................................9

*Livingston v. Roosevelt Union Free Sch. Dist.*,
   No. 17 Civ. 4189, 2020 WL 1172642 (E.D.N.Y. Jan. 15, 2020).............................8

*Llanos v. City of New York*,
   129 A.D.3d 620 (1st Dep't 2015) ...........................................................9

*Lora v Centralized Mgt. Serv., Inc.*,
   18 Civ. 4253, 2020 WL 3173025 (S.D.N.Y. June 12, 2020)..............................23

*McCue v. Cty. of Westchester*,
   57 A.D.3d 746 (2d Dep't 2008)...........................................................18

*McDowell v N. Shore-Long Is. Jewish Health Sys., Inc.*,
   839 F. Supp. 2d 562 (E.D.N.Y. 2012) ....................................................11

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013)...............................................................10

*Mitchell v. Macy's, Inc.*,
   17 Civ. 1845, 2018 WL 9918137 (S.D.N.Y. Sept. 25, 2018)..............................17

*Osborne v Moody's Inv'rs. Serv., Inc.*,
   No. 17 Civ. 1859, 2018 WL 1441392 (S.D.N.Y. March 22, 2018)........................11

*Raghavendra v. Trs. of Columbia Univ.*,
   No. 06 Civ. 6841, 2008 WL 2696226 (S.D.N.Y. July 7, 2008) ...........................18

*Ruiz v. New Avon LLC*,
   No. 18 Civ. 9033, 2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019).........................23

*Russell v. Cnty. of Nassau*,
   696 F. Supp. 2d 213 (E.D.N.Y. 2010) ....................................................11

*Schwarz v Consol. Edison, Inc.*,
   147 A.D.3d 447 (1st Dep't 2017) .........................................................24

*Simon v. City of New York*,
   No. 17 Civ. 9575, 2019 WL 916767 (S.D.N.Y. Feb. 14, 2019) ........................8, 13

*Soloviev v Goldstein*,
   104 F. Supp. 3d 232 (E.D.N.Y. 2015) ....................................................12

*Stinnett v Delta Air Lines, Inc.*,
   18 Civ. 2704, 2019 WL 1493224 (E.D.N.Y. Mar. 31, 2019),
   *aff'd*, 803 F. App'x 505 (2d Cir 2020)....................................................17

*Taylor v. Polygram Records*,
  94 Civ. 7689, 1999 WL 124456 (S.D.N.Y. Mar. 5, 1999) ....................................................13

*Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co*.,
  No. 13 Civ. 7639, 2015 WL 4040882 (S.D.N.Y. July 2, 2015) ...............................................24

*Williams v. New York City Hous. Auth*.,
  61 A.D. 3d. 62 (1st Dep't 2009) ............................................................................................14

**STATUTES**

CPLR § 3211................................................................................................................................18

FED. R. CIV. P. 8 ..................................................................................................................7, 24, 25

Fed. R. Civ. P. 12(b)(6).......................................................................................................*passim*

N.Y.C. Admin. Code § 8–101, *et seq*., ...............................................................................*passim*

N.Y. Exec. Law § 296, *et seq.* ..............................................................................................*passim*

N.Y. Gen. Oblig. Law § 15-301(1)................................................................................................8

N.Y. Labor Law § 201-D............................................................................................................20

Defendants NBCUniversal Media, LLC ("NBCU"), NBC Sports Network, L.P. ("NBCSN"), Comcast Corporation ("Comcast") (collectively, the "Corporate Defendants"), and Sam Flood ("Flood") (collectively, the "Defendants") respectfully move this Court for an Order dismissing the following causes of action in the Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6): Fourth and Fifth Causes of Action for Discrimination (Compl. ¶¶ 57-78), Sixth and Seventh Causes of Action for Hostile Work Environment (Compl. ¶¶ 79–92), Tenth and Eleventh Causes of Action for Aiding and Abetting (Compl. ¶¶ 108-129), and Twelfth Cause of Action for Violation of the New York Labor Law ("NYLL") § 201-D (Compl. ¶¶ 130–138). NBCSN and Comcast further move this Court for an Order dismissing the Complaint in its entirety as to them.

## PRELIMINARY STATEMENT

This is a straightforward contract dispute that Plaintiff Jeremy Roenick ("Roenick") attempts to portray as a discrimination action. In his Complaint, Roenick admits that: (1) the dispute is governed by a valid written employment agreement; (2) the agreement contains a "morals" clause; (3) Roenick, an on-air hockey analyst, made comments about his NBCU co-workers on a podcast, which he recognizes were "insensitive" and "definitely went too far," that resulted in the termination of his employment; and (4) he was suspended immediately thereafter and subsequently discharged. Notwithstanding these admitted facts, Roenick attempts to recast his discharge as the product of gender and sexual orientation discrimination (he is a heterosexual male), retaliation for opposing discrimination, and discrimination based on his political activity. But the Complaint itself reveals that these claims are devoid of factual underpinnings, hinge upon rank speculation, do not rise to the level of plausibility, and therefore, as pled, are deficient as a matter of law.

Shorn of the Complaint's conclusions and speculation, the sole factual basis for Roenick's discrimination claim is that two other employees (a female and a homosexual male) allegedly made vulgar comments and were not discharged. But, according to an exhibit to the Complaint, those other employees were *performing a "sketch" and reading from a script*. Since a scripted performance is not "comparable in all material respects" (as the law requires) to Roenick's articulation on a podcast of a sexual fantasy involving his on-air co-worker, his exclusive reliance upon those non-comparable circumstances renders his discrimination claim fatally deficient. Roenick's discrimination claim is particularly implausible because: (1) he alleges no facts whatsoever that actually support his claim of discriminatory animus toward *him* because he is male and heterosexual; (2) his reference to the two alleged comparators is equally consistent with *favorable* treatment of a male and a heterosexual employee; (3) notwithstanding his claim of anti-male gender bias, Roenick schizophrenically alleges that his industry is "male dominated"; and (4) most importantly, Roenick concedes the existence of a legitimate non-discriminatory reason for his discharge (i.e. his "insensitive" remarks about a co-worker that "definitely went too far").

Moreover, despite his naked allegation that he was subjected to a hostile work environment based on his gender and sexual orientation, Roenick fails to allege even a single instance of harassment in the workplace or abuse in his working environment, let alone workplace harassment based on a protected characteristic. Tellingly, beyond his suspension and the termination of his employment, the only evidence of "harassment" Roenick points to is the fact that NBCU issued press releases concerning those actions. But Roenick's characterization of the press releases as harassment does not make it so. Without any allegations of actual

gender- or sexual orientation-based hostility or abuse in the workplace, Roenick cannot state a cognizable cause of action for hostile work environment discrimination.

Having failed to sufficiently plead causes of action for discrimination or hostile work environment, Roenick's causes of action for aiding and abetting such treatment necessarily fail.

Lastly, Roenick does not state a claim for political discrimination because he does not allege that he engaged in a "political activity" as defined by the New York Labor Law. Rather, he alleges that he *requested* to speak at a 2016 political convention, but never actually did so. Even if his request were "political activity," Roenick's claim would fail because he alleges no facts connecting his 2016 request to the termination of his employment agreement nearly four years later (and after NBCU renewed its agreement with Roenick in 2018). Roenick's contention that his "outspoken support" of President Trump in conversations with Flood somehow falls within the definition of "campaigning" under the statute flies in the face of the plain meaning of that word, as well as the statutory requirements that the "campaigning" be outside of working hours and off of the employer's premises.

## ALLEGATIONS IN THE COMPLAINT[1]

Roenick, a former National Hockey League ("NHL") player, was contractually employed as a studio analyst for NBCU from 2010 until on or about February 6, 2020, when his employment was terminated for violating the morals clause of his employment agreement because he made inappropriate comments about co-workers on a podcast. (Compl. ¶¶ 11-12, 17-19.) Roenick reported to Flood. (Compl. ¶ 17.)

---

[1] For purposes of this motion only, Defendants assume that the factual allegations in the Complaint are true.

### *The Governing Contracts*

In 2016, Roenick and NBCU entered into an employment agreement through which Roenick agreed to provide his services as a sports announcer and commentator to NBCU from July 1, 2016 to June 30, 2018 ("Agreement").[2]  (Compl. ¶ 14; Ex. 1 (Agreement) at ¶¶ 1, 2(a).) On March 21, 2018, the parties entered into a subsequent written agreement ("2018 Extension"), which extended the Agreement for another two-year period, through June 20, 2020.  (Compl. ¶ 14; Ex. 2 (2018 Extension).)

The Agreement, and the 2018 Extension by reference, contained a "Public Morals" clause providing, in pertinent part, that if Roenick were to engage in conduct that "degrades [him] or brings [him] into public disrepute, contempt, scandal, or ridicule, or that shocks, insults or offends the community, or that reflects unfavorably upon [him] or NBC if publicity is given" to such conduct, "NBC shall have the right to terminate this Agreement." (Ex. 1[3] at § B.1; Ex. 2; *see also* Compl. ¶ 14 (quoting in part from this provision).)  The Agreement further provides that Roenick "shall be given a reasonable opportunity to cure" his conduct *only if* curing "to the satisfaction of NBC" is "timely and possible." (Ex. 1 at § B.1.)

---

[2] Copies of the Agreement and the 2018 Extension are attached as Exhibits ("Ex.") 1 and 2 to the accompanying Declaration of Lawrence R. Sandak (the "Sandak Declaration" or "Sandak Decl."). The Court may consider these agreements on this motion because Roenick explicitly refers to them in his Complaint (*see* Compl. ¶¶ 14, 21, 34, 36-38, 40), his first cause of action specifically alleges a breach of these agreements, and his contract and quasi-contract claims arise from his employment relationship with NBCU. *See, e.g., Chambers v Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir 2002) (A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint); *Hamzaraj v. ABM Janitorial Ne. Inc.,* No. 15 Civ. 2030, 2016 WL 3571387, at *1 n.2 (S.D.N.Y. June 27, 2016) (collective bargaining agreement that was "neither attached to nor incorporated by explicit reference into the Complaint" could still be considered on a motion to dismiss because the "complaint is based entirely on his employment relationship with [Defendant], of which the CBA is an integral part").

[3] References to Exhibits herein refer to the exhibits attached to the Sandak Declaration, unless otherwise specified.

The Agreement also contains a provision under the heading "Entire Agreement," providing that the Agreement constitutes "the entire agreement between the parties with respect to the subject matter hereof" and that the Agreement "may not be changed, modified, renewed, extended or terminated except as specifically provided herein or by agreement in writing signed by the parties hereto."  (Ex. 1 at ¶ 12).

In December 2019, Roenick and NBCU were in talks to extend his contract for a 12-month term. (Compl. ¶¶ 47, 53.)

### Roenick's Violation of the Morals Clause and Subsequent Termination

On December 17, 2019, Roenick elected to take part in an episode of Barstool Sports' podcast, "Spittin' Chicklets." (Compl. ¶ 16.)  During the episode, Roenick made sexual and insensitive comments about his NBCU co-host Kathryn Tappen ("Tappen") and two other NBC colleagues.  (Compl. ¶¶ 16, 18.)  Among his inappropriate comments, Roenick said that he would "go to bed" with Tappen and his wife (*i.e.*, engage in a "threesome"). (Compl. ¶ 16.)  As a result of his statements, Roenick was suspended and ultimately discharged for violating the Agreement. (Compl. ¶¶ 17, 19.)  On or about December 24, 2019, NBC issued a press release stating that "Roenick was suspended indefinitely without pay." (Compl. ¶ 17.)  On or about February 6, 2020, Roenick's contract and his employment were terminated.  (Compl. ¶ 19.)

### Roenick's Extraneous Allegations

Despite the clear causal connection between his misconduct and NBCU's termination of the Agreement, Roenick makes a series of allegations regarding isolated incidents from his decade-long employment with NBCU from which he implausibly alleges, without factual support, that NBCU and defendant Flood harbored discriminatory and retaliatory animus toward him and that these were the real reasons his Agreement was terminated.  Specifically, he alleges that "in 2016, he asked Flood for permission to speak at the Republican National Convention on

5

behalf of [then-candidate, now President Donald J.] Trump." (Compl. ¶ 133). Thereafter, including in late 2019, Flood allegedly made a handful of comments expressing his own political opinions, such as "your boy is messing up the country" and "I can't believe you are friends with a guy like that." (Compl. ¶ 133.) Roenick does not allege that he actually spoke at the Convention, nor that he experienced any adverse action between the 2016 request and his 2020 discharge.

Roenick also alleges that "throughout his tenure" at NBCU, Flood "constantly snidely criticized" Tappen when she "accidentally mispronounce[d] the name of a player or coach," and that Roenick "always" comforted her and "complain[ed] to Flood" about these critiques which, according to Roenick, were "based on Tappen's "sex/gender."[4] (Compl. ¶ 20). Roenick allegedly made such a statement to Flood "shortly" before his suspension and termination, which "irritated" Flood. (Compl. ¶ 20.)

Lastly, Roenick alleges that on July 2, 2020, his NBCU colleagues, Tara Lipinski ("Lipinski") and Johnny Weir ("Weir") "participated in a vulgar spoof" as part of a promotion for NBCU's streaming service, Peacock. (Compl. ¶ 23; Compl., Exhibit A (USA Today Article).) In that promotion, Lipinski and Weir allegedly "used a vulgar term for a woman's groin and joked about a sexual affair," but no action was taken against them. (Compl. ¶ 23.)

### *Procedural History*

On July 17, 2020, Roenick filed a complaint in the New York State Supreme Court, New York County. Defendants removed to this Court on September 4, 2020. As is relevant to the

---

[4] Notably, the Complaint alleges that Flood treated Tappen less well for being female (¶ 20) and Roenick less well for being male (¶ 72). Taking the allegations in the Complaint as true, as we must for purposes of this motion, Roenick's allegations demonstrate that Flood gave equivalent treatment to members of both genders, and thus did not discriminate against either gender.

instant motion, Roenick asserts claims for: (1) discrimination under the NYSHRL[5] and the

NYCHRL[6] (Fourth and Fifth Causes of Action); (2) hostile work environment under the

NYSHRL and the NYCHRL (Sixth and Seventh Causes of Action); (3) aiding and abetting under

the NYSHRL and the NYCHRL (Tenth and Eleventh Causes of Action); and (4) political

activities discrimination (Twelfth Cause of Action). Defendants now move to dismiss those

causes of action pursuant to F.R.C.P. Rule 12(b)(6).[7]

**LEGAL ARGUMENT**

**I.     ROENICK'S UTTERLY IMPLAUSIBLE AND LEGALLY INSUFFICIENT
        CLAMS FAIL TO SATISFY MINIMUM PLEADING REQUIREMENTS**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's

"[f]actual allegations must be enough to raise a right to relief above the speculative level," and

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555, 570 (2007). A claim is not facially plausible unless "the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To avoid dismissal, a complaint must offer more than "labels and conclusions," "a

formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of

"further factual enhancement." *Twombly*, 550 U.S. at 555, 557. The requirement that the Court

accept all factual allegations as true does not apply to "[t]hreadbare recitals of the elements of a

---

[5] N.Y. Exec. Law § 296, *et seq.*

[6] N.Y.C. Admin. Code § 8–101, *et seq*.

[7] Roenick brought three other causes of action that are not the subject of this motion: (i) breach of contract (First Cause of Action) and (ii) retaliation under the NYSHRL (Eighth Cause of Action) and the NYCHRL (Ninth Cause of Action). Although Defendants have not moved to dismiss these claims on the pleadings, they vigorously deny all of Roenick's claims and allegations. In addition, Roenick's causes of action for breach of express oral contract (Second Cause of Action) and breach of implied-in-fact contract (Third Cause of Action) have been dismissed. (*See* Dkt. 22.)

cause of action, supported by mere conclusory statements . . . ." *Id*. In *Iqbal*, the Supreme Court stressed that Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–79. "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

## II.     ROENICK CANNOT STATE A PLAUSIBLE DISCRIMINATION CLAIM

Roenick attempts to circumvent the terms of the Agreement by alleging that he was subjected to discrimination on the basis of his sex and sexual orientation, and that it was these protected characteristics -- and not his inappropriate comments -- that caused his discharge. Outside of the fact that asking the Court to credit the allegation that a sports network covering professional ice hockey games discriminates against its heterosexual, male commentators is absurd (and inconsistent with Roenick's description of the industry as "male-dominated" (Compl. ¶ 16)), Roenick has not alleged (nor can he allege) facts that plausibly support his claim.

To successfully plead a claim under the NYSHRL, a plaintiff must allege that he was subjected to "inferior terms, conditions or privileges of employment *because of* [his] membership" in a protected class. N.Y. Exec. Law § 296 *et seq.* ("NYSHRL") (emphasis supplied). These criteria parallel the inquiry mandated by the NYCHRL, under which a plaintiff must allege that he was treated "less well" *because of* a protected characteristic. *Simon v. City of New York*, No. 17 Civ. 9575, 2019 WL 916767, at *4 (S.D.N.Y. Feb. 14, 2019); *Livingston v. Roosevelt Union Free Sch. Dist.*, No. 17 Civ. 4189, 2020 WL 1172642, at *11 (E.D.N.Y. Jan. 15, 2020), *report and recommendation adopted*, No. 17 Civ. 4189, 2020 WL 1166450 (E.D.N.Y.

Mar. 11, 2020) (noting that the 2019 amendments to the NYSHRL "effectively rendered the standard for claims thereunder closer to that of the New York City Human Rights Law").

"[A]t a minimum, employment discrimination claims must meet the [plausibility] standard of pleading set forth in *Twombly* and *Iqbal*." *Hedges v. Town of Madison*, 456 Fed. Appx. 22, 23 (2d Cir. 2012) (summary order). To withstand a motion to dismiss, a complaint must set forth facts sufficient to "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F. 3d 297, 311 (2d Cir. 2015). "[B]ald assertions of discrimination, . . . unsupported by any comments, actions, or examples of similarly situated individuals outside of [the plaintiff's] protected class being treated differently, from which [the Court] could infer that the defendants possessed a discriminatory or retaliatory motive, are implausible and insufficient to survive a motion to dismiss." *Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011).

Under either statute, a plaintiff "bears the burden of showing that the conduct is caused by a discriminatory motive." *Bliss v MXK Rest. Corp.*, 220 F. Supp. 3d 419, 424 (S.D.N.Y. 2016) (granting 12(b)(6) motion to dismiss discrimination claims under the NYSHRL and NYCHRL because the plaintiff failed to allege a causal connection between the conduct she experienced and her gender). The required inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by the plaintiff that "[he] was subjected to disparate treatment ... [compared to persons] similarly situated *in all material respects* to [himself]." *Graham v. Long Is. R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (internal quotations and citations omitted, emphasis supplied).

Roenick provides no facts to support an inference using either method of proof, and his claims therefore fail on the pleadings. *Llanos v. City of New York*, 129 A.D.3d 620 (1st Dep't

2015) (a "plaintiff's failure to adequately plead discriminatory animus is fatal to [his] claim of [discrimination under the NYCHRL].").

With respect to gender, Roenick does not allege a single gender-based comment reflecting animus against men as evidence of discriminatory intent. Nor does he plausibly allege he was treated differently than a comparator. To the contrary, he alleges both discrimination against, and preferential treatment favoring, *both genders*. According to Roenick, Flood discriminated against men (himself, Compl. ¶ 61) and women (Tappen, ¶ 20), as well as favored men (Weir, ¶ 24) and women (Lipinski, ¶ 23). The net of Roenick's allegations is that Flood treated both genders equally. By way of illustration, Roenick cannot plausibly maintain that he was the victim of Flood's anti-male bias while simultaneously alleging that Flood made "discriminatory and harassing statements… to Tappen based on Tappen's [female] sex/gender." (Compl. ¶ 20.) His gender discrimination claim, therefore, cannot survive.

With respect to his sexual orientation discrimination claim, Roenick's threadbare allegations fare no better. Indeed, in his decade-long employment with NBCU and with Flood as his supervisor, Roenick can point to only one alleged comment -- that Weir "is gay and can say whatever" (Compl. ¶ 24) -- in support of his theory that Flood harbored discriminatory intent against heterosexuals. Of course, on its face, this alleged comment is not about heterosexuals, and is therefore not proof that Flood harbored animus toward heterosexuals. Moreover, Roenick provides no information whatsoever about the context of that isolated comment, does not allege what Weir supposedly said, does not allege that Flood was Weir's supervisor, and does not allege that the conversation related in any way to alleged disparate treatment. Courts consider the "totality of the circumstances" and the "overall context in which the challenged conduct occurs" in order to discern whether a cause of action is viable under the NYCHRL. *Mihalik v.*

*Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013). Accordingly, this single isolated statement, allegedly uttered once nearly two years before the termination of Roenick's employment, is simply not evidence of discriminatory animus. *Eyuboglu v. Gravity Media, LLC*, 804 F. App'x 55, 58 (2d. Cir. 2020) ("The comments are therefore properly considered 'stray remarks' insufficient to support a claim of discrimination.")

For "context," according to the Complaint, Roenick attempts to portray Weir and Lipinski as Roenick's comparators, alleging that they engaged in conduct similar to his, and that the only reason they were not discharged for doing so was that they are homosexual and female, respectively. (Compl. ¶ 23.) To have evidentiary value as comparators for purposes of Roenick's discrimination claims, Weir and Lipinski must have shared sufficient circumstantial characteristics with Roenick that they could be considered similarly situated in *all material respects*. *See McDowell v N. Shore-Long Is. Jewish Health Sys., Inc.*, 839 F. Supp. 2d 562, 568–69 (E.D.N.Y. 2012) (citing *Russell v. Cnty. of Nassau,* 696 F. Supp. 2d 213, 233–34 (E.D.N.Y. 2010)) (emphasis supplied). To satisfy the "all material respects" standard, Roenick must allege, at the very least, that his "co-employees were subject to the same performance evaluation and discipline standards" and that the "similarly situated employees who went undisciplined engaged in comparable conduct." *Graham*, 230 F.3d at 40. Such allegations must be sufficiently specific. *Osborne v Moody's Inv'rs. Serv., Inc.*, No. 17 Civ. 1859, 2018 WL 1441392, at *5 (S.D.N.Y. March 22, 2018) (granting 12(b)(6) motion to dismiss plaintiff's Title VII, NYSHRL, and NYCHRL gender discrimination claims where "[p]laintiff's complaint lack[ed] specificity regarding any comparators"). Moreover, the alleged comparators must have reported to the same supervisor. *See, e.g., Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (explaining that a plaintiff and comparators are often not similarly situated where they

have different supervisors); *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 465 (S.D.N.Y. 2006) (collecting cases).

Roenick alleges no facts in support of his claim that Weir and Lipinski are proper comparators. For example, Roenick does not allege that they were subject to contracts containing a morals clause as he was, nor does he allege that either Weir or Lipinski reported to Flood. Moreover, his allegations demonstrate a clear and material distinction between his conduct and theirs -- namely, Roenick's inappropriate comments were made about fellow NBCU employees with whom he shared a studio, and were made publicly, but outside the scope of his employment (*i.e.*, on a third-party podcast) (Compl. ¶ 16), whereas the comments he attributes to Weir and Lipinski[8] were made during a scripted video "sketch" *for NBCU* in which Lipinski and Weir's "commentary" is heard over video of an Olympic skater -- not an NBCU co-worker. (Compl., Ex. A.) Indeed, Roenick's argument that Weir and Lipinski should have been disciplined by NBCU for reading from a script prepared for them by NBCU is nothing short of absurd. Accordingly, as established by Roenick's own Complaint, Weir and Lipinski are not proper comparators.

Lastly, Roenick's discrimination claims are implausible in light of the clear admission in the Complaint that he engaged in the conduct for which his employment was terminated. *Soloviev v Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (granting 12(b)(6) motion to dismiss discrimination claim "where the Amended Complaint itself states a basis for [the plaintiff's] termination that is independent from his race, gender, and national origin."). A plaintiff's "disagreement with the conclusions [his] supervisors drew from incidents which [he]

---

[8] In fact, the "vulgar term" he attributes to Weir and Lipinski was said by one of the other two actors involved in the promotion. (Compl., Ex. A (attributing the statement to John Michael Higgins).) Higgins, like Roenick, is a heterosexual male.

admits occurred, and [his] subjective belief that they should not have reflected badly on [his] performance ... is not evidence that [his] supervisors' appraisals were a sham, invented to mask discrimination." *Taylor v. Polygram Records*, 94 Civ. 7689, 1999 WL 124456, at *27-28 (S.D.N.Y. Mar. 5, 1999).

For all of these reasons, Roenick cannot state a claim of discrimination under the NYSHRL or NYCHRL and his Fourth and Fifth Causes of Action must therefore be dismissed.

## III. ROENICK ALLEGES NO FACTS TO SUPPORT HIS HOSTILE WORK ENVIRONMENT CLAIMS

Adding to his unsupported discrimination claims, Roenick alleges that he was subjected to a hostile work environment on the basis of his sex and sexual orientation.  Notably, although Roenick makes this conclusory allegation several times in his Complaint, he offers only one factual allegation identifying conduct he claims to be hostile or harassing -- the issuance of press releases *following his suspension and his discharge*. (Compl. ¶ 80.)  This is plainly insufficient to establish a hostile work environment under either the NYSHRL or NYCHRL and his Sixth and Seventh causes of action must therefore be dismissed.

As set forth more fully in Section II, *supra*, to successfully plead a claim under the NYCHRL, a plaintiff must establish that she was treated "less well" as a result of the protected characteristic. *Simon*, 2019 WL 916767 at *4. "Courts . . . have recognized that '[u]nder the NYCHRL, there are not separate standards for "discrimination" and "harassment" claims.'" *Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*, No. 16 Civ. 4897, 2017 WL 2258374, at *8 n.12 (S.D.N.Y. May 22, 2017) (quoting *Johnson v. Strive E. Harlem Emp't Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014)).

Within this framework, a hostile work environment "occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or

creating an intimidating, hostile, or offensive working environment.'" *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011). Although the NYCHRL (and, as of 2019, the NYSHRL) imposes liability for harassing conduct that is not necessarily "severe or pervasive," a plaintiff must still allege "'the existence of unwanted [protected category]-based conduct,' because liability under NYCHRL is 'determined by the existence of unequal treatment.'" *Id*. (*quoting Williams v. New York City Hous. Auth*., 61 A.D. 3d. 62 (1st Dep't 2009); *see also Isbell v City of New York*, 316 F. Supp. 3d 571, 593 (S.D.N.Y. 2018). Importantly, these statutes do not "operate as a general civility code." *Fattoruso v. Hilton Grand Vacations Co*., 873 F. Supp. 2d 569, 576 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) (citation omitted). "[T]rivial harms -- *i.e.*, those petty slights or minor annoyances that often take place at work and that all employees experience" are insufficient to establish a hostile work environment. *Culmone-Simeti v. N.Y.C. Dep't of Educ*., No. 17 Civ. 2313, 2018 WL 3384437, at *7 (S.D.N.Y. July 11, 2018).

Here, not only does Roenick fail to allege the requisite causal connection between his protected classifications and any hostility he allegedly suffered, he fails even to allege that he experienced any harassing conduct whatsoever. Indeed, Roenick does not point to a single instance of unwanted gender-based conduct or unwanted sexual orientation-based conduct. *Bermudez*, 783 F. Supp. 2d at 579. To the contrary, the most Roenick can muster beyond a reference to his discharge is that Defendants "harass[ed] him and/or created a hostile work environment by . . . issuing public statements about the suspension and termination of [his] employment and refusing to let [him] cure any perceived conduct issue." (Compl. ¶¶ 80; 88.) In doing so, he tacitly concedes that this case has nothing to do with discrimination or harassment by Defendants and everything to do with *his* "conduct" and the provisions of the Agreement that address such conduct. In other words, every "fact" alleged in support of his claim of harassment

arises directly out of Roenick's own misconduct and Defendants' response to it -- suspension, termination of employment, and the issuance of press releases concerning those actions. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (distinguishing between "discrete acts" of discrimination, such as discharge, and hostile environment, which involves "repeated conduct" that "cannot be said to occur on any particular day" and is "based on the cumulative effect of individual acts"); *Akinde v. New York City Health & Hosps. Corp.*, 169 A.D.3d 611, 612 (1st Dep't 2019) (applying *Morgan* to city and state law claims).

Roenick's allegations are, on their face, insufficient to plausibly state a claim for hostile work environment because they have no connection whatsoever to his gender or sexual orientation. Everyone has a gender and a sexual orientation. It is plainly insufficient to merely identify the plaintiff's and then nakedly allege that any adversity in the workplace was *because of* the characteristics so identified. *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals."). Roenick's claim is particularly implausible and counter-intuitive because he is a former star ice hockey player and sportscaster of NHL games who claims that he was "harassed" by the network that employed him, in an industry he refers to as "male-dominated," for being a heterosexual male.[9]

---

[9] To the extent Roenick is attempting to allege a hostile work environment based upon his alleged complaints about Flood's treatment of Tappen (Compl. ¶ 20), this too fails as it does not implicate Roenick's own gender or sexual orientation. If anything, it undermines Roenick's gender-based claims by showing that Flood allegedly treated both genders equally.

Nor does his Complaint set forth any factual basis upon which discriminatory animus can even be inferred.  *See Feliciano v. City of New York*, No. 14 Civ. 6751, 2015 WL 4393163, at *14 (S.D.N.Y. July 15, 2015) (granting 12(b)(6) motion to dismiss hostile work environment claims under Title VII, NYSHRL and NYCHRL because the complaint had "not allege[d] that the limited acts on which its hostile work environment claim is based were discriminatory"); *Carter v. Verizon*, No. 13 Civ. 7579, 2015 WL 247344, at *10–12 (S.D.N.Y. Jan. 20, 2015) (granting 12(b)(6) motion to dismiss age-based hostile work environment claim because "an isolated comment cannot plausibly state a claim for hostile work environment" and dismissing gender-based hostile work environment claims because "[p]laintiff's failure to allege a link to his gender requires that they be dismissed").  In fact, as set forth in Section II, *supra*, Roenick alleges that Flood *both* discriminated against and favored men and women -- in other words, that Flood treated both genders equally.

At best, Roenick's allegations express his minimal frustrations with Flood as a supervisor, but such grievances do not give rise to an actionable harassment claim.[10] *Carter*, 2015 WL 247344, at *12 (A plaintiff's "frustrations and annoyances with his workplace and with supervisors . . . are not actionable as a hostile work environment under federal or state law."). Indeed, courts applying New York law have dismissed hostile work environment claims involving conduct much more offensive than anything Roenick alleges here.  *See Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18, 23 (1st Dep't 2014) (granting dismissal of NYCHRL hostile work environment claim under CPLR where plaintiff alleged that a law firm partner made inappropriate comments regarding her expression of breast milk,

---

[10] It is worth noting that although Defendants are constrained to assume (for purposes of this motion) that the allegations in the Complaint are true, they deny Roenick's allegations about Flood's management.

including that "women who breast fed were cows," holding that "a reasonable person would consider the complained-of conduct nothing more than petty slights and trivial inconveniences."); *see also Mitchell v. Macy's, Inc.*, 17 Civ. 1845, 2018 WL 9918137, at *4 (S.D.N.Y. Sept. 25, 2018) (granting 12(b)(6) motion to dismiss hostile work environment claims where defendant allegedly "exposed her bare breasts to [him] on the sales floor" three times, noting there is no indication the plaintiff "suffered any differential treatment"); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (granting 12(b)(6) motion to dismiss hostile work environment claim under the NYCHRL where employee alleged that his supervisor "would come around [his] cube on occasions and place her vagina literally on [his] left shoulder or inches from [his] face" and noting that such conduct "plainly does not violate even [l]ower threshold of NYCHRL"). Roenick's claim should likewise be dismissed.

## IV. ROENICK'S AIDING AND ABETTING CLAIMS, DERIVATIVE OF HIS NON-VIABLE DISCRIMINATION CLAIMS, MUST BE DISMISSED

For all of the reasons set forth in Sections II and III, *supra*, Roenick cannot state a claim of discrimination and, therefore, his aiding and abetting claims, which are entirely derivative of those claims, also must be dismissed. "Primary discrimination claims under the NYSHRL and NYCHRL … are prerequisites for bringing successful aiding and abetting claims." *See Griffin v. Sirva, Inc.*, 291 F. Supp.3d 245, 254 (E.D.N.Y. 2018) ("The reason section 296(6) [of the NYSHRL] requires a primary violation is intuitive—[w]here there has been no discrimination, there is nothing to aid or abet." (internal citation and quotation marks omitted)); *Stinnett v Delta Air Lines, Inc.*, 18 Civ. 2704, 2019 WL 1493224, at *9 (E.D.N.Y. Mar. 31, 2019), *aff'd*, 803 F. App'x 505 (2d Cir 2020) (granting 12(b)(6) motion and dismissing the plaintiff's claims for aiding and abetting under the NYSHRL and NYCHRL in light of dismissal of underlying discrimination claims).

Accordingly, to the extent the Court dismisses Roenick's Third through Sixth Causes of Action (for discrimination and hostile work environment), his Tenth and Eleventh Causes of Action must likewise be dismissed.

## V.   ROENICK'S POLITICAL DISCRIMINATION CLAIM IS FATALLY FLAWED

Roenick's political discrimination claim must be dismissed because he does not allege that he participated in a political activity as defined by statute, nor can he allege any causal connection between his purported activity and the termination of his employment.

Under Section 201-D of the NYLL, it is unlawful for any employer to "discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privileges of employment" because of "an individual's political activities outside of working hours, off of the employer's premises and without use of the employer's equipment or other property." NYLL § 201-D(2)(a); *see also McCue v. Cty. of Westchester*, 57 A.D.3d 746, 746 (2d Dep't 2008) (dismissing claim where the plaintiff failed to allege that the event he participated in occurred outside of working hours). "Political activities" is narrowly-defined and limited to three specific activities: "(i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party or political advocacy group." NYLL § 201-d(1)(a); *see also Raghavendra v. Trs. of Columbia Univ.*, No. 06 Civ. 6841, 2008 WL 2696226, at *10 (S.D.N.Y. July 7, 2008) (granting 12(b)(6) motion to dismiss as to NYLL § 201-D claim on the ground that the complaint failed to state participation in a qualifying activity where the plaintiff "alleged that he attempted to organize a political advocacy group (the RESCUE fund), but his efforts apparently never succeeded").

Here, Roenick fails to allege that he engaged in a political activity as defined by the statute. Rather, he alleges that, in 2016, he asked Flood's permission to speak at the Republican

National Convention on behalf of then-candidate Donald Trump.  (Compl. ¶ 133.)  According to Roenick, although Flood did not forbid him from doing so, he cautioned Roenick that his participation "would not look good on [his] NBC record" (whatever that means).  (*Id*.)  Roenick alleges that subsequently, Flood made "derogatory comments" to Roenick about Roenick's relationship with President Trump.  (*Id*.)

Notwithstanding multiple other but-for causes of his suspension and termination alleged in the Complaint, Roenick summarily alleges that it was actually his "outspoken support of President Trump and *his desire* to participate in political activities… [that] directly caused and contributed to [his] suspension and termination."  (Compl. ¶ 134 (emphasis supplied).)  "Desire" to participate in political activities, however, does not constitute a political activity, and Roenick does not allege that his desire ever materialized into "campaigning" or "participating in fund-raising activities."  Accordingly, Roenick does not even *allege* that he engaged in "political activities."

Indeed, the allegations of the Complaint place Roenick well outside the statutory definition of "political activities."  He does not allege that his contract was terminated because he ran for public office, campaigned for a candidate for public office, or engaged in fund-raising efforts for such a candidate.  In his letter to the Court, dated October 13, 2020, Roenick's counsel amplified and explained his "political activities" cause of action: "Roenick's 'outspoken support of President Trump' (Compl. ¶ 134) qualifies as 'campaigning,'…." He emphasized that "Flood made derogatory comments about Roenick's support of the President just weeks before the 'Spittin Chiclets' podcast (Compl. ¶ 133)…."  Letter to Hon. John P. Cronan from Scott William Clark, dated October 13, 2020, at 3.  But Roenick's argument that "outspoken support" is the equivalent of "campaigning" under the NYLL defies basic English usage. "Campaigning" means

"to organize a series of activities to try to achieve something."  *Campaign* (verb), Cambridge Advanced Learner's Dictionary & Thesaurus (4th Ed. 2013); *see also Campaign*, Collins English Dictionary, *available at* www.collinsdictionary.com/us/dictionary/english/campaign (last accessed November 11, 2020) (countable noun: "a planned set of activities that people carry out over a period of time in order to achieve something such as social or political change"; intransitive verb: to "carry out a planned set of activities over a period of time in order to achieve their aim."); *Campaign*, Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/campaign (last accessed November 11, 2020)  (noun: "a connected series of operations designed to bring about a particular result"; intransitive verb: "to go on, engage in, or conduct a campaign").  "Outspoken support" is basic speech, without the requisite components of organized activity and the intent to achieve a particular goal that are central to "campaigning."  Had the New York State Legislature intended by enactment of NYLL 201-D to protect those who merely articulate political opinions, it could have stated so expressly and would surely not have limited the law's coverage to those engaged in "campaigning for a candidate for public office."

Finally, even if Roenick had engaged in a qualifying political, his claim nonetheless would fail because he cannot plausibly allege a causal connection between his *2016* request to speak at the Republican National Convention and the termination of his employment contract in *2020*.[11]  First, temporal proximity between the alleged political activity and the alleged adverse action is utterly lacking.  *See, e.g., Clark Cnty. Sch. Dist. v Breeden*, 532 U.S. 268, 273-74 (2001) (explaining that "temporal proximity between an employer's knowledge of protected

---

[11] Although Roenick alleges instances of political banter between Flood and himself in the years between 2016 and 2020, political discussion and the vocalizing of differing opinions is not what the statute protects as "political activities."  For purposes of determining temporal proximity, therefore, those conversations are irrelevant.

activity and an adverse employment action … must be 'very close,'" citing cases holding that a three-month period and a four-month period were insufficient, and holding that in the case at bar, "20 months later suggests, by itself, no causality at all.")

Second, Roenick alleges several intervening events that preclude any inference of a causal chain.  For example, Roenick alleges that on March 21, 2018, nearly two years after his request to speak at the Convention, Defendants (including Flood) extended his contract for another two-year term.  (Compl. ¶¶ 14, 34.)  Roenick also acknowledges that in or about December 2019, more than three years after the request, he "was [again] in discussions with Flood to extend [his] contract by another 12-month term."  (Compl. ¶ 47.)  Finally, and most significantly, Roenick admits that on December 17, 2019, he made comments on a publicly available podcast about "going to bed with a coworker," that his actions went "too far," and that he was suspended shortly thereafter and subsequently discharged because he "made inappropriate comments about fellow coworkers." (Compl. ¶¶ 16-18.)  His conclusory assertion that the termination of his employment was somehow connected to a single request four years earlier is therefore implausible in light of subsequent events and cannot form the basis for a viable claim.  Accordingly, Roenick has not and cannot state a political discrimination claim, and his Twelfth Cause of Action must be dismissed.

## VI.     ROENICK FAILS TO STATE A CLAIM AGAINST COMCAST OR NBCSN

Roenick asserts all but two of his causes of action against "NBC" (which he defines as including NBCU, NBCSN and Comcast[12] ) or "All Defendants."  The content of the Complaint, however, is almost entirely addressed to factual allegations regarding the conduct of Roenick's

---

[12] Roenick also includes "NBC Sports Group" among these entities.  As set forth in the Declaration of Erik Bierbauer in Support of Defendants' Motion to Remove (Dkt. 3), NBC Sports Group is not a legal entity, but rather is a division of NBCU -- a fact that Roenick acknowledges in his Complaint. (Compl. ¶ 5.)

actual employer, NBCU.  Indeed, Roenick does not provide any specific factual allegations with respect to NBCSN or Comcast that could plausibly subject either entity to liability under any applicable theory.  Instead, his formulaic recitation of the elements of his claims, generally, with respect to "All Defendants" or "NBC," and without providing any actual allegations implicating NBCSN or Comcast individually, does not meet the *Iqbal/Twombly* pleading standard.

A complaint achieves facial plausibility when the facts alleged support a reasonable inference that the defendant is liable for the misconduct alleged.  *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679.  This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  It simply makes no sense to maintain NBCSN or Comcast as defendants as there are no allegations against them.

### A.     *Roenick's Contract Claims Fail as to NBCSN and Comcast Because They Are Not Parties To Roenick's Employment Agreement*

The sole counterparty to both the Agreement and the 2018 Extension is "NBC Sports Group, a division of NBCUniversal Media LLC."  (Ex. 1 at 1; Ex. 2 at 1.)  In other words, not only is NBCU Roenick's sole employer, it is the only entity against which his breach of contract claims can be alleged.  *See Daley v Related Cos., Inc.*, 198 A.D.2d 118, 118-19 (1st Dep't 1993) (upholding dismissal of employee's breach of contract action against subsidiaries of his employer who were not themselves parties to the employment agreement); *Edgreen v Learjet Corp.*, 180 A.D.2d 562, 563 (1st Dep't 1992) (upholding summary judgment "since each of the agreements which form the basis of plaintiffs' claims indicate, on their face, that the signatory was [a third party] and not defendants, herein."); *Banks v Correctional Servs. Corp.*, 475 F. Supp. 2d 189, 199 (E.D.N.Y. 2007) (recognizing a "general rule that a parent and subsidiary are treated as separate legal entities for breach of contract actions").

Accordingly, Roenick's First Cause of Action must be dismissed as to NBCSN and Comcast.

**B.      *Roenick Cannot State A Claim Against NBCSN Or Comcast Because Neither Was His Employer***

As set forth above, only NBCU was Roenick's employer.  Where "a plaintiff asserts an employment action against defendants who are not plaintiff's direct employer, she must plead that the entities are 'sufficiently integrated to be treated as a single-employer.'"  *Lora v Centralized Mgt. Serv., Inc*., 18 Civ. 4253, 2020 WL 3173025, at *5 (S.D.N.Y. June 12, 2020) (citing *Brown v. Daikin Am. Inc*., 756 F.3d 219, 226 (2d Cir. 2014)).  In assessing whether entities should be treated as a "single-employer," the Second Circuit instructs courts to look to the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Brown*, 756 F.3d at 226 (citing *Cook v. Arrowsmith Shelburne, Inc*., 69 F.3d 1235, 1240 (2d Cir. 1995)).  At the pleadings stage, a "plaintiff must do more than simply state legal conclusions and recite the elements of the 'single employer' standard to survive a motion to dismiss."  *Juhua Han v. Kuni's Corp*., No. 19 Civ. 6265, 2020 WL 2614726, at *8 (S.D.N.Y. May 22, 2020) (internal citations omitted.)

"[W]here a plaintiff's allegations are so inadequate that they fail to put a defendant 'on notice of the theory of employer liability,' dismissal is appropriate."  *Ruiz v. New Avon LLC*, No. 18 Civ. 9033, 2019 WL 4601847, at *13 (S.D.N.Y. Sept. 22, 2019) (internal citations omitted).  Generalized allegations against "all defendants," such as those permeating Roenick's Complaint, are insufficient.  *See, e.g.*, *Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001).  As the Second Circuit explained:

> Although Fed.R.Civ.P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. By lumping all the defendants

together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard….

*Atuahene*, 10 Fed. Appx. at 34 (internal citations omitted).

Here, the sum total of Roenick's allegations against NBCU and Comcast consist of: (i) a single sentence, on information and belief, about each entity's corporate citizenship (Compl. ¶ 5); (ii) the conclusory assertion that "all defendants were responsible" (Compl. ¶ 7); and (iii) a recitation of the joint employer standard (Compl. ¶ 7).  This is plainly insufficient.  *See Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13 Civ. 7639, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015) (Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.").  Nonetheless, apparently satisfied with his single-paragraph recitation of the "relationship between the defendants" (which does not even mention NBCSN or Comcast by name), Roenick summarily defines all of the Corporate Defendants as "NBC" and proceeds with his allegations, never mentioning either entity by name again.  (Compl. ¶ 7.)

Notably, Roenick does not allege that Flood (whom he alleges was responsible for the termination of his employment) (Compl. ¶¶17-19)), was an employee of NBCSN or Comcast (and he was not).  Nor does he allege facts to support that either entity played a role in the terms and conditions of his employment.  *Schwarz v Consol. Edison, Inc.*, 147 A.D.3d 447, 449 (1st Dep't 2017) (dismissing claims against parent company where "the complaint does not allege that [parent] hired him or had any control over [employer's] employment decisions so as to warrant holding it liable for [employer's] acts); *Esposito v Altria Group, Inc.*, 67 A.D.3d 499, 499 (1st Dep't 2009) (dismissing claims against employer's parent where plaintiff "failed to demonstrate that [parent] exercised control over or made any employment decisions related to her").  In short, Roenick's global, generalized allegations with respect to "Defendants" cannot

state a plausible claim against NBCSN and Comcast and Roenick's claims against these entities must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Fourth through Seventh and Tenth through Twelfth Causes of Action in the Complaint, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: November 13, 2020
        New York, New York

Respectfully submitted,

**PROSKAUER ROSE LLP**

By: /s/ *Lawrence R. Sandak*
      Lawrence R. Sandak
      Melissa A. Overbeck
Eleven Times Square
New York, New York 10036
(T) 212-969-3000
(F) 212-969-2900
lsandak@proskauer.com
moverbeck@proskauer.com

*Attorneys for Defendants*