UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMY ROENICK,<br><br>             Plaintiff,<br><br>     -against-<br><br>SAM FLOOD, NBC SPORTS GROUP, NBC SPORTS NETWORK, L.P., NBC UNIVERSAL MEDIA, LLC, COMCAST CORPORATION, and JOHN DOES 1-10,<br><br>             Defendants. | Case No. 20 Civ. 7213 (JPC)<br><br>**ECF CASE** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Jon Michael Choate
Scott William Clark
Shegerian & Associates
90 Broad Street, Suite 804
New York, NY 10004
(212) 257-8883
jchoate@shegerianlaw.com
sclark@shegerianlaw.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... 3

INTRODUCTION ...................................................................................................................... 4

RELEVANT FACTUAL ALLEGATIONS ............................................................................. 5

LEGAL STANDARD ................................................................................................................. 8

ARGUMENT ............................................................................................................................... 8
   I.   ROENICK HAS PLAUSIBLY ALLEGED THAT HIS SEX AND/OR SEXUAL ORIENTATION WAS A MOTIVATING FACTOR IN DEFENDANTS' DECISION TO TERMINATE HIS CONTRACTUAL EMPLOYMENT. ............................................................ 8

      A.   Roenick plausibly alleges a claim of discrimination under the New York Human Rights Law (Fourth Cause of Action)......................................................................................... 9

         1.   Plaintiff has sufficiently alleged that Defendants terminated his employment. ....... 10
         2.   Plaintiff's allegations give plausible support to a minimal inference of discriminatory motivation. ................................................................................................... 10
         3.   Defendants' arguments against the sufficiency of Plaintiffs' discrimination allegations misunderstand the law. ................................................................................... 14

      B.   Roenick plausibly alleges a claim of discrimination under the New York City Human Rights Law (Fifth Cause of Action).................................................................................... 17

      C.   Roenick's aiding and abetting claims should survive with his primary claims (Tenth and Eleventh Causes of Action).......................................................................................... 17

CONCLUSION.......................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) ................................................................................ 8, 13

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 590 U.S. ____, 2020 WL 3146686, 2020 LEXIS 3252 (2020) ............................................................................................................................ 10, 15

*EEOC v. Port Authority of New York & New Jersey*, 769 F.3d 247 (2d Cir. 2014) ....................... 8

*Goldstein v. Pataki*, 516 F.3d 50 (2d Cir. 2008) ............................................................................ 8

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) ........................................................... 11

*LaSalle v. City of N.Y.*, 13-CV_5109, 2015 U.S. Dist. LEXIS 41163, 2015 WL 1442376, at *3 (S.D.N.Y. Mar. 30, 2015) ........................................................................................................ 17

*Lenzi v. Systemax, Inc.* 944 F.3d 97 (2d Cir. 2019) ..................................................................... 10

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ............................................. 17

*Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003) ......................................................... 11

*McDowell v. N. Shore – Long Island Jewish Health Sys.*, 839 F. Supp. 2d 562 (E.D.N.Y. 2012) 13

*McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001) ............................................................ 11

*Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217 (2d Cir. 2008) ......................................... 10

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ....................................................................... 8

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ................................ passim

**Statutes**

N.Y. Exec. Law § 296(1)(a) .......................................................................................................... 10

## INTRODUCTION

Sports commentator Jeremy Roenick was interviewed on a podcast in his free time and in that interview told a story about a vacation he had went on with his spouse and with his good friend and co-commentator Kathryn Tappen. Part of that story was an anecdote about how he had jokingly implied to another vacationer that he would "go to bed" each night with his wife and Tappen. Shortly after the podcast aired, Defendants suspended and then subsequently terminated Roenick's employment, alleging that he had breached the public morals provision of his contract. However, Defendants neither provided Roenick a reasonable opportunity to cure the alleged breach—as required by that same provision—nor explained why the alleged breach could not be reasonably cured.

While Roenick's telling of the anecdote was regrettable, Defendants' rush to *summarily* terminate Plaintiff's employment appears disproportionate when compared to Defendants' actions with respect to other sports commentators who made comments that were similarly inappropriate. Accordingly, Plaintiff has brought an action alleging, *inter alia*, breach of his employment contract for the termination without opportunity to cure, as well as discrimination on the theory that the decision to terminate his employment and to not give him an opportunity to cure the alleged breach was improperly motivated by the fact that he is a heterosexual male. Applying common sense to the context of the comments at issue, the rush to terminate Plaintiff, and the comparative comments identified by Plaintiff, Plaintiff's factual allegations give plausible support to at least a minimal inference that the fact that Plaintiff is a heterosexual male was a motivating factor in Defendants' decision to terminate Plaintiff's employment. Accordingly, Defendant's motion should be denied with respect to Plaintiff's discrimination claims and aiding and abetting claims.

## RELEVANT FACTUAL ALLEGATIONS

Plaintiff is a former National Hockey League professional athlete who retired after eighteen seasons in the NHL in 2009. Dkt. 1-1 at 6 (¶ 11) In 2010, Plaintiff was hired as a studio analyst by NBC Sports. Dkt. 1-1 at 6 (¶ 11). In March 2016, Plaintiff entered into an employment agreement with NBC Sports Group to be a sports announcer and commentator for two years, from July 1, 2016 ending June 30, 2016. Dkt. 1-1 at 6 (¶ 14). The contract contained in its provisions clause stating that Plaintiff "shall be given written notice" prior to any "termination, reduction and/or suspension" and a "reasonable opportunity to cure such failure or refusal, if such cure is timely and possible to the reasonable satisfaction of NBC." Dkt. 1-1 at 6; Dkt. 28-1 at 10. The contract also contained a "Public Morals" provision:

> E. Public Morals.
>
> 1.      If at any time your personal conduct with respect to what is generally considered public morals, either while rendering services hereunder or in your public life, is without due regard to the reasonable best interests of NBC or to social convention of public morals or decency, or if you commit any act, or become involved in any situation or occurrence that degrades you in society or bring you into public disrepute, contempt, scandal, or ridicule, or that shocks, insult or offends the community (as would be determined using the reasonable person standard), or that reflects unfavorably upon you or NBC if publicity is given to any such prior conduct, commission, or involvement on your part (any of the above, an "Act"), NBC shall have the right to terminate this Agreement; provided, however, that prior to any such termination, you shall be given a reasonable opportunity to cure such Act if such Act is timely and possible, to the satisfaction of NBC.

Dkt. 1-1 at 6 (¶ 14); Dkt. 28-1 at 10-11.

Plaintiff worked providing sports commentary for Defendants for more than three years after entering into the employment agreement. Dkt. 1-1 at 6 (¶ 15). On December 17th, 2019, Plaintiff was interviewed for a podcast called "Spittin' Chiclets" by Barstool Sports. Dkt. 1-1 at 6 (¶ 16). During the interview, Plaintiff told a "colorful story" about going on vacation in

Portugal with his wife and a coworker, Kathryn Tappen ("Tappen"), "a close friend" to Plaintiff and his family. Dkt. 1-1 at 6 (¶ 16). As part of the story, Plaintiff relayed he had jokingly implied to other vacationers in Portugal that he would "go to bed" with his wife and Tappen, but also clarified in the podcast that it was "never going to happen." Dkt. 1-1 at 7 (¶ 16). Plaintiff went on to say a number of strongly positive things about Tappen, including that she is "one of the most professional sports personalities that I know" and that "she is true blue one of my favorite people in the world, and I'm lucky that I'm next to her, and she's a good friend of mine." *Id.*

Following the podcast, Defendant Sam Flood ("Flood"), Plaintiff's supervisor, texted him: "you went too far. You may have crossed a line that there was no return from. I'm really upset and I need to take a couple days to figure out my next move." Dkt. 1-1 at 7 (¶ 17). On December 24, 2019, NBC issued a press release stating that Plaintiff was suspended indefinitely without pay. *Id.* Plaintiff was not given written notice of the suspension prior to its publication.

Following the suspension, Tappen told Plaintiff she was not offended by his comments—indeed, Tappen had joked with Plaintiff's wife about the comments via text message after the podcast aired—but told him that she was under pressure from both NBC and a women's rights organization to make a statement condemning Plaintiff's comments. *Id.* Plaintiff helped Tappen draft her statement, condemning what Plaintiff had said during the podcast, but also affirming that Tappen and Roenick remained friends. *Id.*

On January 11, 2020, Plaintiff issued a video message on his Twitter account apologizing for the podcast comments. He stated, "I want to take this opportunity to apologize to NBC Sports, Kathryn Tappen, Patrick Sharp, Anson Carter, for some insensitive comments I made on a recent podcast. I never meant to offend anyone, and I definitely went too far, and for that, I deeply regret it." Dkt. 1-1 at 7 (¶18). He stated further, "I've called everybody involved and I'm

so thankful for their loving and gracious acceptance of my apology, and that includes my family and friends." *Id.*

On February 6, 2020, Flood called Plaintiff to inform that his employment was terminated for making "inappropriate comments about fellow coworkers." Dkt 1-1 at 8 (¶ 19). Plaintiff was never given an opportunity to cure the act that Defendants deemed a material breach of the contract. *Id.* Plaintiff alleges that in terminating him and not giving him a reasonable opportunity to cure, Defendants treated Plaintiff differently from other NBC commentators and personalities. Dkt 1-1 at 9 (¶ 23). In support of this allegation, Plaintiff described a July 2, 2020 spoof of the 2018 US national figure skating champion where NBC Skating commentators Tara Lipinski ("Lipinski") and Johnny Weir ("Weir") used an inappropriate term for a woman's groin and joked about a sexual affair. Dkt 1-1 at 9 (¶ 23). Plaintiff also described hearing Weir "colorful commentary regarding the body parts of ice skaters" during the 2018 Olympic games. Dkt 1-1 at 9 (¶ 24). Plaintiff asked Flood about the comments to which Flood responded "[Weir] is gay and can say whatever." *Id.*

## RELIEF REQUESTED

Plaintiff respectfully that the Court **deny** Defendants' motion to dismiss with respect to Plaintiff's Fourth, Fifth, Tenth, and Eleventh causes of action.

Upon review of the motion papers and relevant case law, Plaintiff does not oppose dismissal with respect to Plaintiff's Sixth, Seventh, and Twelfth causes of action. Plaintiff also does not oppose dismissal of NBC Sports Network or Comcast from this action.

Defendants have not moved for dismissal of Plaintiff's First, Eighth, or Ninth causes of action.

**LEGAL STANDARD**

In ruling on a motion to dismiss, the trial court "must accept as true all of the factual allegations contained in the complaint." *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015). All reasonable inferences must be drawn in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). "'[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination' at the motion to dismiss stage." *Vega* at 83 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). Plaintiff's complaint must only "assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *See id.* at 84 (quoting *EEOC v. Port Authority of New York & New Jersey*, 769 F.3d 247, 254 (2d Cir. 2014)). Plaintiff "need only give plausible support to a minimal inference of discriminatory motivation" in order to withstand dismissal. *See id.* at 84. In making the plausibility determination, the trial court must "draw on its judicial experience and common sense." *See id.* at 86 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

**ARGUMENT**

I. **ROENICK HAS PLAUSIBLY ALLEGED THAT HIS SEX AND/OR SEXUAL ORIENTATION WAS A MOTIVATING FACTOR IN DEFENDANTS' DECISION TO TERMINATE HIS CONTRACTUAL EMPLOYMENT.**

Defendants terminated Plaintiff's employment shortly after he told an anecdote on a podcast about how, while on vacation, he had jokingly implied to other vacationers that Tappen—a close friend and coworker—was "going to bed" with Plaintiff and his wife during the vacation. Despite the public morals clause of Plaintiff's employment contract requiring that he be given a reasonable opportunity to cure any alleged breach of the clause, Defendants summarily terminated him without giving him the opportunity to do so. This stands in contrast to Defendants' treatment of two other sports commentators—Lipinski and Weir—who made

comments that were similarly inappropriate but were neither terminated nor disciplined. The rationale for this difference in treatment is provided by a conversation between Plaintiff and Defendant Flood where Flood told Plaintiff that Weir could make inappropriate comments due to his sexual orientation.

Plaintiff's resulting discrimination claims under the New York Human Rights Law and New York City Human Rights Law are simple and plausible: Defendants would not have terminated Plaintiff for relaying a story about he had jokingly implied while on vacation that he was romantically involved with both his wife and a co-worker that was vacationing with them were he not a heterosexual male. Alternatively, Defendants would have given Plaintiff an opportunity to cure the alleged breach of the public morals clause—as required by the contract— were Plaintiff not a heterosexual male. These allegations are sufficient to give plausible support to a minimal inference that it was Plaintiff's sex and/or sexual orientation that distinguished the way his comments were dealt with by Defendants from those of Lipinski and Weir. Given Defendants' lack of discipline in response to Lipinski and Weir's comments on-air comments, or, as Defendants' suggest, Defendants' *endorsement* of the comments in the approval of a script containing them, it is plausible that neither Lipinksi nor Weir would have terminated had they made the same comments as Plaintiff on a podcast, and it is plausible that Plaintiff would not have been terminated for the same comments had he been a woman or not heterosexual. Accordingly, and as will be discussed in more detail below, Defendants' motion must be denied with respect to Plaintiff's Fourth and Fifth causes of action.

    **A. Roenick plausibly alleges a claim of discrimination under the New York Human Rights Law (Fourth Cause of Action).**

To defeat a motion to dismiss in a discrimination claim brought under the New York Human Rights Law ("NYHRL"),[1] a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *See Vega*, 801 F.3d at 87.[2]

    1. Plaintiff has sufficiently alleged that Defendants terminated his employment.

As to the first element, Plaintiff has alleged that Defendants terminated his employment, Dkt. 1-1 at 8 (¶ 19), and in doing so breached their contractual obligations to him, including by failing to give him an opportunity to cure. Dkt. 1-1 at 8-9 (¶ 21), 10-13 (First Cause of Action, ¶¶ 32-44). That Plaintiff has sufficiently pled this element (with respect to at least some of the defendants) does not appear to be in dispute.

    2. Plaintiff's allegations give plausible support to a minimal inference of discriminatory motivation.

With respect to the second element, Plaintiff "need only give plausible support to a minimal inference of discriminatory motivation" in order to withstand dismissal. *See Vega* at 84. Plaintiff may raise an inference that his sex or sexual orientation was a motivating factor in Defendants' decision by showing disparate treatment: that he was treated "less favorably than a

---

[1] Although the language cited here is in the context of a Title VII claim, and Plaintiff has not brought claims under Title VII, the Second Circuit treats analysis of discrimination claims brought under Title VII as identical to claims brought under the New York Human Rights Law. *Lenzi v. Systemax, Inc.* 944 F.3d 97, 107 n.7 (2d Cir. 2019) (citing *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008).

[2] Under Title VII, disparate treatment on the basis of sexual orientation is encompassed by the prohibition of disparate treatment on the basis of sex. *See Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 590 U.S. ___, 2020 WL 3146686, 2020 LEXIS 3252 (2020). Unlike Title VII, the New York Human Rights Law explicitly enumerates "sexual orientation" as a protected category. N.Y. Exec. Law § 296(1)(a), however, for purposes of the analysis here, this is a distinction without a difference.

similarly situated employee outside his protected group[.]" *See Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Such comparator employee must be "similarly situated in all material respects" to Plaintiff. *See id.* "[S]imilarly situated in all material respects does not mean all respects, generally, but rather *sufficiently* similar 'to support *at least a minimal inference that the difference of treatment may be attributable to discrimination.*'" *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) (emphasis added). "All material respects" is thus a flexible standard, that "varies somewhat from case to case" and, contrary to Defendants' assertion, does not require that Plaintiff have the same supervisor as the comparators. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39-40 (2d Cir. 2000).[3] "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Mandell* at 379.

      a) Plaintiff's allegations plausibly support that Weir and Lipinski were similarly situated to Plaintiff.

As this is a motion to dismiss, to demonstrate Weir and Lipinski were "similarly situated in all material respects" Plaintiff's allegations only need to plausibly support that they were sufficiently similar to support a minimal inference that the difference of treatment may be attributable to discrimination. *Compare Vega*, 801 F.3d at 84 (a plaintiff need only give plausible support to a minimal inference of discriminatory motivation to withstand summary judgment) *with McGuinness*, 263 F.3d at 54 (all material respect means sufficiently similar to support at

---

[3]     Defendants incorrectly represent that *Graham* held that "the alleged comparators **must** have reported to the same supervisor." Dkt. 27 at 17 (emphasis added). Review of the relevant passage from *Graham* indicates that different supervisors were *one* factor that a decision discussed by the court in Graham considered among several with respect to analysis of a specific case. *See Graham* at 39-40. Nowhere did the *Graham* court hold that comparators *must* report to the same supervisor to be similarly situated, nor can such a holding be fairly inferred from the reasoning of the decision.

least a minimal inference that the difference of treatment may be attributable to discrimination.) Plaintiff has done so. Weir and Lipinski were both sports commentators employed by Defendants that made inappropriate comments of a sexual nature that resulted in a negative public reaction. They were not disciplined but Plaintiff was terminated despite a clause in his contract that provided he shall have a reasonable opportunity to cure any alleged breach. And, while Plaintiff cannot know precisely what is contained in Weir and Lipinski's contracts, it is minimally plausible and consistent with common sense that they, as commentators employed by Defendants, would have substantially similar if not the same public morals clauses in their own contracts. That the difference in treatment is attributable to differences in sex and/or sexual orientation is corroborated by Defendant Flood's comment to Plaintiff. This is not a stray remark — it is directly relevant to the disparate treatment at issue: why Plaintiff was punished for his comments while Weir and Lipinski were not. It is evidence that Defendants applied a different standard to Weir because of Weir's sexual orientation, and consequently, a different standard to Plaintiff because of Plaintiff's sexual orientation.

      b) Even if the Court were to find that Weir and Lipinski are not sufficiently similar, their comments are still evidence that Plaintiff's sex and/or sexual orientation were a motivating factor in his dismissal.

Alternatively, if Weir and Lipinski are not sufficiently similarly situated to Plaintiff, Defendants' assertion that the skit in issue at Exhibit A was *scripted* presents another path to raising the necessary inference. "[B]ecause discrimination claims implicate an employer's usually unstated intent and state of mind, rarely is there direct, smoking gun evidence of discrimination. Instead, plaintiffs usually must rely on bits and pieces of information to support an inference of discrimination." *See Vega* at 86 (internal quotation marks and citations omitted). A plaintiff may rely on circumstantial evidence to indirectly establish that his sex or sexual

orientation was a motivating factor in the adverse decision. *Cf. McDowell v. N. Shore – Long Island Jewish Health Sys.*, 839 F. Supp. 2d 562, 568 (E.D.N.Y. 2012). The inference that may be drawn is that Defendants viewed sexually inappropriate comments as *allowable* and approved a skit containing them, so long as they were being made by women or non-heterosexual men. Indeed, that is the thrust of Defendant Flood's comment to Plaintiff. Thus, as an alternative to disparate treatment, Plaintiff's allegations regarding Weir and Lipinski's comments may instead be viewed as evidence regarding Defendants' policies with respect to differences in protected categories. In the same way that an email stating that "men are not allowed to make sexual jokes" could establish that sex is a motivating factor in a decision, so to can Defendants' decision to run and arguably endorse a skit with inappropriate sexual humor involving sports commentators that are not heterosexual males while deciding to punish similar comments made by Plaintiff.

In making the plausibility determination, the trial court must "draw on its judicial experience and common sense." *See Vega,* 801 F.3d at 86 (quoting *Iqbal*, 556 U.S. at 679). The comments at issue made by Plaintiff, Weir, and Lipinski are objectionable, but in the world we live in do not stand out as exceptionally deplorable or shocking to the conscience. Yet Plaintiff was summarily terminated, and one can infer from Defendants' decision that Defendants will assert that what Plaintiff said was simply so awful that the harm was irreperable that it was impossible for him to cure the alleged breach. In this context, based on the facts alleged, it is plausible that the reason these comments were treated as irredeemable were because they were made by a heterosexual man. Put another way, it is plausible based on the facts alleged that Plaintiff would not have been terminated were he homosexual and made the same comments, or if he had been female and made the same comments. Plaintiff has alleged sufficient facts to

plausibly support a minimal inference of discriminatory motivation, and Defendant's motion should be denied as to Plaintiff's Fourth Cause of Action.

      3. Defendants' arguments against the sufficiency of Plaintiffs' discrimination allegations misunderstand the law.

Turning to Defendants' motion, Defendants' raise a number of arguments aimed solely at the sufficiency of Plaintiff's factual allegations regarding Defendants' motivations. Dkt. 27 at 15-19. However, Defendants' multiple volleys fall well short of their target for lack of sufficient legal impetus. Generally, Defendants' arguments incorrectly treat elements that are sufficient to prove discrimination into elements that, in Defendants' view, are necessary.

      c) Defendants incorrectly assert that Plaintiff must show generalized discrimination against men *or* heterosexuals rather than that Plaintiffs' status as a heterosexual male was a motivating factor in Defendants' decision.

Defendants treat as dispositive its portrayal of Plaintiff's complaint as alleging "both discrimination against, and preferential treatment favoring, *both genders*." Dkt. 27 at 16 (emphasis in original). "According to Roenick, Flood discriminated against men and women, as well as favored men and women. The net of Roenick's allegations is that Flood treated both genders equally." *Id*. (citations to complaint omitted). Defendants' argument that overall equality in treatment precludes Roenick's claim of discrimination is incorrect as a matter of law. As Justice Gorsuch explained in *Bostock v. Clayton County*:

> The company maintained too, that it hadn't violated the law because, as a whole, it tended to favor hiring women over men. Unsurprisingly by now, these submissions did not sway the Court. That an employer discriminates intentionally against an individual only in part because of sex supplies no defense to Title VII. Nor does the fact an employer may happen to favor women as a class.
> . . .
> [A]n employer cannot escape liability by demonstrating that it treats males and females comparably as groups. . . . . [A]n employer is liable for intentionally requiring an individual female employee to pay more into a pension plan than a male counterpart even if the scheme promotes equality at the group level. Likewise, an employer who intentionally fires an individual homosexual or

-14-

> transgender employee in part because of that individual's sex violates the law even if the employer is willing to subject all male and female homosexual or transgender employees to the same rule.

140 S. Ct. at 1744. The question is not whether men and women were, on average, treated the same, or even whether men, on average, were treated better by Defendants than women. While differences or similarities in *generalized* treatment of the sexes as *groups* might ultimately be evidence of discriminatory intent (or a lack thereof), for purposes of this motion to dismiss the question is whether Plaintiff's allegations give plausible support to a minimal inference that his sex and/or sexual orientation were a motivating factor in Defendants' decision-making regarding his termination. Defendants' argument must be rejected.

    d) Defendants incorrectly assert that Plaintiff must show that Defendants expressed hostility towards men or towards heterosexuals.

Another flaw underlying Defendants' argument is the assumption that Plaintiff must prove some sort of hostility or animosity towards men or heterosexuals in order to state a plausible claim. This is apparent in Defendant's challenge to the sufficiency of Plaintiff's allegations regarding sexual orientation:

> Roenick can point to only one alleged comment – that Weir 'is gay and can say whatever' – in support of his theory that Flood harbored discriminatory intent against heterosexuals. Of course, on its face, this alleged comment is not about heterosexuals and is therefore not proof that Flood harbored **animus** toward heterosexuals.

Dkt. 27 at 10 (emphasis added, citation to complaint omitted). While evidence of animus—hostility—may be sufficient to establish that a decision was motivated by an employee's sexual orientation, it is not necessary. As established, Plaintiff does not need to allege that Defendants terminated Plaintiff's employment because they hate or dislike men, heterosexuals, or heterosexual men, only that his sex and/or sexual orientation were a *motivating factor* in the decision to terminate him. That motivation does not have to be rooted in hostility.

Further, Defendants' argument here is also logically unsound. Favoritism towards one sexual orientation is the flip side of discrimination towards another. For example, if only heterosexuals receive promotions at a company, one can hardly argue that favoring heterosexuals is not legally discrimination against non-heterosexuals because it does not show them animus. The non-heterosexual employees are not being promoted because they are not heterosexual: their sexual orientation is thus an impermissible motivating factor in the employer's decision.

    e) Defendants improperly isolate Plaintiff's claims as pertaining to discrimination against Plaintiff's status as a heterosexual or Plaintiff's status as a man, rather than Plaintiff's status as a heterosexual man.

An additional problem with Defendants' reasoning is that Defendants treat sex and sexual orientation as being distinct. Under Defendants' framing of Plaintiff's Complaint, Plaintiff can only allege that he was discriminated against because of his sex or because of his sexual orientation. Logically, that is unsound. It would be absurd for an employer to argue that it has not violated Title VII or the NYHRL because, although it discriminates against employees that are female *and* homosexual, it does not discriminate against female heterosexual or male homosexual employees.  Nor could an employer escape liability for only discriminating against employees who are Black *and* homosexual, but not employees who are non-Black and homosexual or Black and heterosexual.

    f) Plaintiff has not conceded that there was a non-discriminatory justification for his termination.

Finally, Defendants last argument in this line is that Plaintiff's admission that he made the comments at issue provides a non-discriminatory reason for his termination that renders his claim implausible. Dkt. 26 at 18. This argument inexplicably equates Plaintiff's admission that he made the comments to an admission that the comments provided just cause for his termination. That is false. To the contrary, Plaintiff's claim is that *even if* the comments were

sufficient to violate the public moral clause of the employment contract, Defendants had a contractual duty to provide him written notice and an opportunity to cure. Indeed, Plaintiff's first cause of action is for breach of contract which Defendants have not moved to dismiss in this motion. Plaintiff has alleged that Defendants' decision to breach that contract was motivated at least in part by Plaintiff being a heterosexual male. Defendants' argument must be rejected and their motion to dismiss Plaintiff's fourth cause of action must be denied.

### B. Roenick plausibly alleges a claim of discrimination under the New York City Human Rights Law (Fifth Cause of Action).

Claims under the New York City Human Rights law ("NYCHRL") are analyzed independently and *more* liberally than Title VII or NYHRL claims. *See LaSalle v. City of N.Y.*, 13-CV_5109, 2015 U.S. Dist. LEXIS 41163, 2015 WL 1442376, at *3 (S.D.N.Y. Mar. 30, 2015). Accordingly, if Plaintiff's NYHRL claims withstand a motion to dismiss, so should his NYCHRL claims: Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights law as a *floor* below which the City's Human Rights law cannot fall." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (emphasis in original). As demonstrated above, Plaintiff has met his burden for pleading a discrimination claim under the NYHRL on the basis of sex and/or sexual orientation. Accordingly, Plaintiff has also met his burden under for his NYCHRL claims.

### C. Roenick's aiding and abetting claims should survive with his primary claims (Tenth and Eleventh Causes of Action).

Defendants have only moved for dismissal of Roenick's aiding and abetting claims as derivative of his discrimination and hostile work environment claims. Dkt. 27 at 23-24. To the

extent that Plaintiff has demonstrated plausible discrimination claims under the NYHRL and NYCHRL, Defendants' motion to dismiss these causes of action must be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss as to Plaintiff's Fourth, Fifth, Tenth, and Eleventh Causes of Action. Plaintiff does not oppose dismissal of Plaintiff's Sixth, Seventh, and Twelfth causes of action. Plaintiff also does not oppose dismissal of NBCSN or Comcast from this action.

Dated:  November 30, 2020                    SHEGERIAN & ASSOCIATES

                By:  */s/ Jon Choate*
                      Jon M. Choate
                      Scott William Clark
                      90 Broad Street, Suite 804
                      New York, NY 10004
                      Tel.: (212) 257-8883
                      Fax: (212) 804-7299
                      *Attorneys for Plaintiff*