UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMY ROENICK,<br><br>          Plaintiff,<br><br>  - against -<br><br>SAM FLOOD, NBC SPORTS GROUP, NBC SPORTS NETWORK, L.P., NBC UNIVERSAL MEDIA, LLC, COMCAST CORPORATION, AND JOHN DOES 1-10,<br><br>          Defendants. | No. 20 Civ. 7213 (JPC)<br><br>**ECF CASE** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT IN PART**

PROSKAUER ROSE LLP

Lawrence R. Sandak
Melissa A. Overbeck
Eleven Times Square
New York, New York 10036
(T) 212-969-3000
(F) 212-969-2900
lsandak@proskauer.com
moverbeck@proskauer.com

*Attorneys for Defendants*

# CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL ARGUMENT ...................................................................................................................  3

    I.    ROENICK CONCEDES THAT HIS SIXTH, SEVENTH, AND TWELFTH CAUSES OF ACTION, AND ALL CLAIMS AS TO NBCSN AND COMCAST, SHOULD BE DISMISSED ................................................................................... 3

    II.    ROENICK'S MISPLACED RELIANCE ON "MINIMAL INFERENCE" LANGUAGE IGNORES THE IMPLAUSIBILITY OF HIS CLAIMS ........................... 3

    III.    ROENICK DOES NOT STATE A PLAUSIBLE DISCRIMINATION CLAIM .............. 4

        A.    Weir and Lipinski Are Not Proper Comparators ..................................................... 6

        B.    Weir and Lipinski's Gender and Sexual Preference Do Not Advance Roenick's Claims ................................................................................................... 7

        C.    Flood's Alleged 2018 Comment is Insufficient to Show Discriminatory Motive ................................................................................................................. 8

        D.    Roenick's Admission Renders His Theory Implausible ........................................ 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**CASES**                                                            **PAGE(S)**

*Alfano v. Costello*,
  294 F.3d 365 (2d Cir. 2002).................................................................................................5

*Arifi v. Cent. Moving & Storage Co.*,
  147 A.D.3d 551, 46 N.Y.S.3d 784 (2017) ...........................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................2, 4, 10

*Bliss v MXK Rest. Corp.*,
  220 F. Supp. 3d 419 (S.D.N.Y. 2016)..................................................................................5

*Graham v. Long Is. R.R.*,
  230 F.3d 34 (2d Cir. 2000)...................................................................................................6

*Lenzi v. Systemax, Inc.*,
  944 F.3d 97 (2d Cir. 2019)...................................................................................................9

*Llanos v. City of New York*,
  129 A.D.3d 620 (1st Dep't 2015) .........................................................................................8

*Meyer v. Bear Rd. Assocs.*,
  124 F. App'x 686 ................................................................................................................8

*Meyer v. State of N.Y. Office of Mental Health*,
  174 F. Supp. 3d 673 (E.D.N.Y. 2016), *aff'd sub nom. Meyer v. N.Y. State
  Office of Mental Health*, 679 F. App'x 89 (2d Cir. 2017) .................................................9

*Naumovski v. Norris*,
  934 F.3d 200 (2d Cir. 2019).................................................................................................9

*Roache v. Long Island R.R.*,
  No. 18 Civ. 6443, 2020 WL 5594640 (E.D.N.Y. Sept. 17, 2020)............................................5

*Texas Dep't of Cmty. Affairs v. Burdine*,
  450 U.S. 248 (1981)..............................................................................................................8

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d. Cir. 2015)..............................................................................................3, 4

**PRELIMINARY STATEMENT**

Plaintiff Jeremy Roenick's opposition to Defendants' motion to dismiss is notable for its emphasis on his contractual rights, which are described in its opening paragraph.  Roenick then explains that he simply cannot fathom why Defendants terminated his employment under the morals clause of his contract after he publicly verbalized a sexual fantasy involving his co-anchor.  Accordingly, he asks this Court to provide him a forum not only to litigate his breach of contract claim, but also to test his "theory that the decision to terminate his employment and to not give him an opportunity to cure [his] alleged breach was improperly motivated by the fact that he is a heterosexual male."

This is but one of several "theories" Roenick floated in his Complaint, several of which he already has abandoned.  But a complaint in U.S. District Court is not the mechanism to test mere hypotheses, possibilities, or far-fetched theories.  A plaintiff must allege facts sufficient to move his claims from the conceivable to the plausible.  Roenick fails to do so.

Roenick argues that the termination of his contract "appears disproportionate when compared to Defendants' actions with respect to other sports commentators who made comments that were similarly inappropriate."  His supporting "facts" are limited to those set forth in Exhibit A to his Complaint concerning ice skating commentators Johnny Weir and Tara Lipinski.  The comparison Roenick attempts to draw between his admittedly "regrettable" remarks on a podcast and Weir and Lipinski's recitation of words on a script is plainly inapt.  Nor was the scripted commentary read by Weir and Lipinski (and two actors from NBC programs) during footage of an Olympic skater "similarly inappropriate" to Roenick's articulation of a desire to engage in a "threesome" with his co-anchor and fellow NBC employee, Kathryn Tappen.

Further, Roenick's claim that the Weir/Lipinski comparison plausibly supports "at least a minimal inference" of discrimination against Roenick simply because he is a heterosexual male and each of them is not is absurd.  Together, Weir and Lipinski represent genders and sexual orientations that are (i) male, (ii) female, (iii) heterosexual, and (iv) homosexual.  Roenick selects two of those characteristics—female and homosexual—for no reason other than that they are not shared by Roenick, and then hypothesizes that those characteristics immunized Weir and Lipinski from discipline, thereby allegedly supporting his claim of discrimination against heterosexual males.  Setting aside the fundamental implausibility of the assertion that a television sports network discriminates against heterosexual men, the multiple differing characteristics of Weir and Lipinski (some of which are shared by Roenick) render Roenick's comparison, and his conclusion, meaningless.

Finally, *Iqbal* counsels that the existence of "more likely explanations" for alleged discrimination should be considered on a motion to dismiss.  Here, the implausibility of Roenick's discrimination theory is heightened because Roenick concedes both his misconduct and the temporal proximity of his suspension and discharge to that misconduct.  (Compl. ¶¶ 16-19, 22.)  Conversely, Roenick offers no explanation for why an employer bent on terminating the contract of its employee because of discrimination would have contracted for his services in 2016, extended that contract in 2018, and would be "in discussions… to extend Roenick's contract by another 12-month term" just weeks before he made the podcast comments that led to his suspension and termination. (Compl. ¶¶ 34, 47.)

Because deciding a motion to dismiss is "a context-specific task" requiring the reviewing court to draw on its experience and common sense, Roenick's Fourth, Fifth, Tenth and Eleventh

2

Causes of Action, all of which hinge upon Roenick's highly implausible claim of discrimination because he is a heterosexual male, should be dismissed.

## LEGAL ARGUMENT

### I. ROENICK CONCEDES THAT HIS SIXTH, SEVENTH, AND TWELFTH CAUSES OF ACTION, AND ALL CLAIMS AS TO NBCSN AND COMCAST, SHOULD BE DISMISSED

Roenick states that he does not oppose the portion of Defendants' Motion[1] seeking dismissal of the Sixth and Seventh Causes of Action (Hostile Work Environment), and Twelfth Cause of Action (Political Discrimination). (Pl. Opp. at 7.) These claims should therefore be dismissed, with prejudice, for all of the reasons set forth in Defendants' moving memorandum of law. (*See* Motion at Sections III and VI.) Similarly, Roenick "does not oppose dismissal of NBC Sports Network or Comcast from this action." (Pl. Opp. at 7.) Accordingly, the Complaint should be dismissed in its entirety, with prejudice, as to these two Defendants.

### II. ROENICK'S MISPLACED RELIANCE ON "MINIMAL INFERENCE" LANGUAGE IGNORES THE IMPLAUSIBILITY OF HIS CLAIMS

Throughout his Opposition[2], Roenick argues that his allegations "need only give plausible support to a minimal inference of discriminatory motivation," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d. Cir. 2015), to survive this motion. While Roenick emphasizes the "minimal inference" portion of the quoted text, *Vega* focused on "what 'plausibility' means in the context of employment discrimination claims." *Id*. at 86. The Second Circuit held that, "[a]t the pleadings stage . . . a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by

---

[1] References to "Motion" or "Mot." herein refer to Defendants' Memorandum of Law in Support of their Motion to Dismiss in Part (Dkt. 27).

[2] References to "Opposition" or "Pl. Opp." herein refer to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. 29).

3

alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id*. at 87.  As applied here, because Roenick offers no direct evidence of discrimination, he must allege *facts* showing discrimination (albeit indirectly), and those *facts* must be adequate to make his claim plausible.  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain *sufficient factual matter* . . . to 'state a claim to relief that is *plausible* on its face.'") (emphasis supplied).  A claim is not facially plausible unless "the plaintiff pleads *factual content* that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.* (emphasis supplied).

Roenick's emphasis on a "minimal inference" standard is calculated to disregard the requirements of establishing the "plausibility" of his discrimination claims through "factual content."  Because Roenick's arguments suggest that even merely *conceivable* claims of discrimination must survive a motion to dismiss, they run afoul of *Iqbal* and its progeny, including *Vega*.  *See Iqbal*, 556 U.S. at 680 ("If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed.").

### III.   ROENICK DOES NOT STATE A PLAUSIBLE DISCRIMINATION CLAIM

In an effort to obfuscate the fact that this is purely a contract dispute, Roenick argues that had he not been a heterosexual male, NBCU would not have "rushed" to terminate his contract and instead would have given him the opportunity to cure his breach of the morals clause. (Pl. Opp. at 4.)  He provides no support for this assertion, either factual or legal, relying instead on the assertion that his burden is minimal at the pleading stage.  As explained above and below, Roenick's argument is misguided.

Under both the NYSHRL and NYCHRL, Roenick "bears the burden of showing that [his discharge[3]] was caused by a discriminatory motive." *Bliss v MXK Rest. Corp.*, 220 F. Supp. 3d 419, 424 (S.D.N.Y. 2016). "An inference of discriminatory motivation may be supported directly, such as by statements that an adverse employment action was related to plaintiff's protected class, or indirectly by an allegation that plaintiff was treated different from and less favorably than similarly situated peers." *Roache v. Long Island R.R.*, No. 18 Civ. 6443, 2020 WL 5594640, at *10 (E.D.N.Y. Sept. 17, 2020) (internal citations omitted). "Where discriminatory motive is to be proved by evidence of disparate treatment, the plaintiff must demonstrate that employees who are similarly situated in all material respects received more favorable treatment." *Alfano v. Costello*, 294 F.3d 365, 375 (2d Cir. 2002).

Roenick offers no facts that move his theory across the line from conceivable to plausible, let alone support an inference that his discharge was the result of discrimination. This is particularly true in light of the fact that Roenick himself has alleged an entirely plausible alternate explanation for the termination of his contract and inability to cure – that he made inappropriate, sexually charged comments about his NBCU co-workers[4] in a public forum. Accordingly, "[a]pplying common sense" to the circumstances surrounding Roenick's termination, as Roenick asks this Court to do, does not lead to his desired conclusion (*i.e.*, that his termination was the result of discrimination toward a heterosexual male sports commentator)

---

[3] In his Opposition, Roenick asserts that he has sufficiently alleged that he was terminated in breach of his contract, and that this element of his claim is not in dispute. (Pl. Opp. at 10.) While he is correct that Defendants do not dispute that NBCU terminated Roenick's employment, Defendants certainly deny that doing so was a breach of Roenick's contract.

[4] In his Opposition, Roenick focuses only on one of the comments he made about Tappen – namely, that he "jokingly implied" to another vacationer that he engaged in "threesomes" with his wife and Tappen. (Pl. Opp. at 8.) Notably, that was neither the only offensive comment Roenick made about Tappen, nor was she the only colleague about whom he made inappropriate comments during the podcast. *See, e.g.*, Compl. ¶ 18 (explaining that Roenick had to apologize to colleagues Patrick Sharp and Anson Carter for his insensitive comments as well.)

but rather to the much more logical conclusion that he was discharged because his conduct was sufficiently offensive as to warrant termination and to be incurable.

    A.    *Weir and Lipinski Are Not Proper Comparators*

Roenick acknowledges that to qualify as comparators, Weir and Lipinski must be "similarly situated" to him "in all material respects" (Pl. Opp. at 11), yet the Complaint fails to allege facts that support such a finding. (*See* Compl. ¶¶ 23, 62, 73.) To satisfy the "all material respects" standard, Roenick must allege, at the very least, that Weir and Lipinski "were subject to the same performance evaluation and discipline standards" and that they "went undisciplined [despite] engag[ing] in comparable conduct" to the conduct for which Roenick was disciplined. *Graham v. Long Is. R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Roenick makes no such allegations. In fact, he includes no allegations whatsoever about the performance, evaluation and discipline standards to which Weir and Lipinski were subject. Nor can he, as they were in a separate group of the company with a separate reporting structure and, as Roenick acknowledges in his Opposition, he has no knowledge of the terms of their employment. (Pl. Opp. at 12.) Instead, Roenick's entire argument rests on his opinion that the comments he (mistakenly[5]) attributes to Weir and Lipinski were "similar" to his.

Indeed, Roenick does not dispute key facts from the Complaint establishing non-comparability: (1) Weir and Lipinski did not report to Flood when they participated in the sketch; (2) the comments Roenick attributes to them were made in the context of a scripted video "sketch," in which they read words written for them by others (as contrasted with Roenick's, which were his own words, uttered entirely of his own accord) (Compl. ¶ 16); and (3) the

---

[5] In fact, the "vulgar term" he attributes to Weir and Lipinski was said by one of the other two actors involved in the promotion. (Compl., Ex. A (attributing the statement to John Michael Higgins).) Higgins, like Roenick, is a heterosexual male.

Weir/Lipinski script was not about fellow NBCU employees (as contrasted with Roenick's inappropriate sexual comments about his co-workers) (Compl. ¶ 18).  These differences are all fatal to Roenick's claim that Weir and Lipinski are his comparators "in all material respects."

Roenick's fallback argument—that the scripted sketch demonstrates Defendants' acceptance of "sexually inappropriate comments" only when "made by women or homosexual men"—is nonsense.  Weir and Lipinski were joined in the sketch by two other actors, both of whom are heterosexual and one of whom is a heterosexual male.  (*See* Compl. Ex. A.)

> B. *Weir and Lipinski's Gender and Sexual Preference Do Not Advance Roenick's Claims*

Even assuming that Weir and Lipinski were somehow proper comparators to Roenick, his reference to their respective genders and sexual preferences as proof of discrimination is implausible.  Together, Weir and Lipinski represent male and female genders, as well as heterosexual and homosexual orientations.  Roenick's assertion that each of them is protected from discipline by one of their characteristics (in Weir's case, his homosexuality; in Lipinski's, her gender), but not the other (which they share with Roenick – male and heterosexual), does not make sense.  Equally absurd is his argument that he can pick and choose among the characteristics of his chosen comparators, thereby manufacturing a "theoretical comparator" who does not actually exist.

Perhaps recognizing these analytical flaws, Roenick argues (again without any legal support) that his claim is not that he was discriminated against because he is a man or because he is heterosexual, but rather because he is *both*. (Pl. Opp. at 16.)  Stated differently, in response to Defendants' observation that his two identified comparators share with him the exact traits he claims resulted in his termination (one is male, the other is heterosexual), Roenick revises his argument to allege that he was only discriminated against for being both male *and* heterosexual.

7

While the law does contemplate situations in which a combination of characteristics may result in discrimination where a single characteristic would not, common sense counsels that the plight of heterosexual male sports broadcasters is not among them. Not surprisingly, Roenick alleges no facts whatsoever to support an inference of discrimination against his particular combination of traits.

### C. Flood's Alleged 2018 Comment is Insufficient to Show Discriminatory Motive

Roenick's remaining allegation in support of his theory of discrimination—a single alleged comment by Flood in 2018—is insufficient to support an inference of discriminatory animus.[6] Roenick summarily argues that Flood's alleged comment is not merely a stray remark, but provides neither legal authority nor facts to support this position. Indeed, he offers no information whatsoever about the context of that isolated comment, does not allege what Weir supposedly said that preceded Flood's comment, does not allege that Flood was Weir's supervisor, and does not allege that the conversation related in any way to alleged disparate treatment. In considering whether a single comment is evidence of discrimination, courts consider: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-

---

[6] Roenick objects to Defendants' use of the term "animus," arguing that disparate treatment claims do not require a finding of discriminatory animus (which he defines as "hostility"). (Pl. Opp. at 15.) His objection is misplaced. *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981) (explaining that an employer can defeat a discrimination claim purely by showing "that the employment decision had not been motivated by discriminatory animus."); *see also Meyer v. Bear Rd. Assocs.*, 124 F. App'x 686, 689 (2d Cir. 2005 ("to establish a disparate treatment claim under 42 U.S.C. § 3604(b), plaintiffs-appellants must … establish that discriminatory animus was a substantial factor in the decision to adopt the policy at issue here."); *Llanos v. City of New York*, 129 A.D.3d 620 (1st Dep't 2015) (A "plaintiff's failure to adequately plead discriminatory animus is fatal" to a discrimination claim."); *see also Arifi v. Cent. Moving & Storage Co.*, 147 A.D.3d 551, 46 N.Y.S.3d 784 (2017) (same).

making process). *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019).  Given the facts pled, the alleged comment obviously does not weigh in the direction of relevance as to points (2) and (4).  As to point (3), no reasonable juror could view the remark (Weir "is gay and can say whatever") as discriminatory against Roenick.  Accordingly, the court cannot reasonably conclude that it was anything other than a stray remark.

Moreover, even if Flood had made the alleged comment (which Defendants deny), it does not support any inference of discriminatory motivation in Roenick's discharge two years later. *Meyer v. State of N.Y. Office of Mental Health*, 174 F. Supp. 3d 673, 691 (E.D.N.Y. 2016), *aff'd sub nom. Meyer v. N.Y. State Office of Mental Health*, 679 F. App'x 89 (2d Cir. 2017) ("Although there is no bright line rule regarding what length of time renders an allegedly discriminatory remark too attenuated to constitute evidence of discrimination, courts in this Circuit have generally found that a five month lapse between an allegedly discriminatory statement and an adverse employment action is too long a gap to find the remark probative of discrimination without some other evidence that the remark was related to the adverse employment action.")  Nor is the alleged comment discriminatory in the slightest. *See, e.g., Naumovski v. Norris*, 934 F.3d 200, 215–16 (2d Cir. 2019) (holding that a supervisor's comment to a plaintiff that her "problem is that you're a single female in your mid-30s" was precisely the sort of "stray remark" that is insufficient to support an inference of discriminatory intent.")  Accordingly, this remark cannot support a plausible inference of discrimination.

D.      *Roenick's Admission Renders His Theory Implausible*

Roenick argues that his admission to the conduct at issue does not provide "just cause" for his termination.  In so doing, he once again conflates his contract dispute with his allegations of discrimination.  The relevant inquiry is not whether Roenick's discharge was for "just cause" as defined by the contract, but whether it was discriminatory.

9

In regard to the claims actually at issue, Roenick's admission that he made the inappropriate comments for which his employment was terminated provides a "more likely explanation[]" for his termination, which *Iqbal* counsels courts to consider on a motion to dismiss. *Iqbal*, 556 U.S. at 681 (factual allegations consistent with a discriminatory purpose failed to plausibly support an inference of discrimination where more likely explanations exist). The immediacy of Flood's strong adverse reaction and the temporal proximity of Roenick's suspension and discharge to his admitted misconduct, all of which are pled in the Complaint, further reveal the implausibility of Roenick's theory of discrimination.  And, while alternative pleading is permitted, Roenick's assertion of *facts* alleging he was discharged in retaliation for objecting to discrimination (by the same individual) against a *woman* should not be ignored.  The Complaint's allegations that Roenick was discriminated against because he is a man and that Tappen was discriminated against because she is a woman, further demonstrate that Roenick's discrimination claim is implausible.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Fourth through Seventh and Tenth through Twelfth Causes of Action in the Complaint, with prejudice, and dismiss the Complaint in its entirety, with prejudice, as against NBCSN and Comcast, together with such other and further relief as the Court deems just and proper.

Dated: December 7, 2020
       New York, New York

Respectfully submitted,

**PROSKAUER ROSE LLP**

By: /s/ *Lawrence R. Sandak*
    Lawrence R. Sandak
    Melissa A. Overbeck

*Attorneys for Defendants*