UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                          :
JEREMY ROENICK,                                           :
                                                          :
                              Plaintiff,                  :
                                                          :            20 Civ. 7213 (JPC)
                 -v-                                      :
                                                          :               OPINION
SAM FLOOD et al.,                                         :             AND ORDER
                                                          :
                              Defendants.                 :
                                                          :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

    Jeremy Roenick is a former professional hockey player.  Following his retirement from the

National Hockey League ("NHL"), he joined NBC Sports as a studio analyst.  In late 2019, Roenick

made sexually explicit comments about his NBC Sports coworker while appearing on a Barstool

Sports podcast.  Soon after, NBC suspended and later fired him.  In response, he brought this suit

against his former boss and various NBC-affiliated entities.  Roenick says that a motivating factor

in his termination was the fact that he is a heterosexual male.  He alleges claims for breach of

contract, discrimination on the basis of sex and sexual orientation, hostile work environment,

retaliation, aiding and abetting, and discrimination for engagement in political activities.

    Before the Court is Defendants' motion to dismiss the Complaint in part pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  Roenick does not oppose Defendants' motion in

several respects, so the primary issue is whether he has alleged plausible claims for sex and sexual

orientation discrimination pursuant to the New York State Human Rights Law ("NYSHRL") and

the New York City Human Rights Law ("NYCHRL"), as well as claims for aiding and abetting

certain alleged acts of discrimination.  For the reasons set forth below, the Court grants in part and

denies in part Defendants' motion.  The Court concludes that Roenick's claims for aiding and abetting retaliation may proceed along with the claims that are not the subject of this motion, namely, breach of contract and claims of retaliation under the NYSHRL and the NYCHRL.  The Court dismisses all other claims.

## I.  Background

### A.  Factual Background

The following factual allegations are taken from the Complaint, Dkt. 1-1 ("Complaint" or "Compl."), the document attached to it as an exhibit, documents incorporated by reference, and documents which are "integral" to the Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  Although Roenick did not attach to the Complaint the two employment agreements at issue here, *see* Dkt. 28-1, Exhs. 1, 2, the Court considers them because they are referenced throughout the Complaint and are integral to it, *see, e.g.*, Compl. ¶¶ 14, 21.  For purposes of Defendants' motion, the Court "accept[s] as true the factual allegations in the [C]omplaint and draw[s] all inferences in the plaintiff's favor."  *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

Roenick left the NHL in 2009 after playing eighteen seasons in the league.  Compl. ¶ 11.  The following year, he began working as an NBC Sports studio analyst.  *Id.*  On March 24, 2016, Roenick and NBC entered into a two-year employment agreement pursuant to which Roenick would serve as a sports announcer for NHL games and the 2018 Winter Olympics.  *Id.* ¶ 14; Dkt. 28-1 at 1.  This agreement included a so-called "morals clause" which stated as follows:

> If at any time your personal conduct with respect to what is generally considered public morals, either while rendering services hereunder or in your public life, is without due regard to the reasonable best interests of NBC or to social conventions of public morals or decency, or if you commit any act, or become involved in any situation or occurrence that degrades you in society or bring you into public disrepute, contempt, scandal, or ridicule, or that shocks, insults or offends the

community (as would be determined using the reasonable person standard), or that
reflects unfavorably upon you or NBC if publicity is given to any such prior
conduct, commission, or involvement on your part (any of the above, an "Act"),
NBC shall have the right to terminate this Agreement; provided, however, that prior
to any such termination, you shall be given a reasonable opportunity to cure such
Act if such Act is timely and possible, to the satisfaction of NBC.

Dkt. 28-1 at 9-10; *see* Compl. ¶¶ 14, 21, 36.  NBC extended Roenick's employment agreement

through June 30, 2020.  Dkt. 28-2; *see* Compl. ¶ 14.

During his tenure at NBC, Roenick says that his boss, Sam Flood, made "discriminatory

and harassing statements" to Kathryn Tappen, Roenick's coworker and fellow broadcaster.

Compl. ¶ 20.  Flood "criticized Tappen for her performance as a commentator and broadcaster

when [Tappen], for example, would accidentally mispronounce the name of a player or coach."

*Id.*  But Roenick was Tappen's "biggest supporter" and would tell her to "keep her head up and

stay confident."  *Id.*  He also would "push back and complain" to Flood about Flood's statements

to Tappen, which Roenick contends were "based on Tappen's sex/gender."  *Id.*

Johnny Weir also worked at NBC as a skating commentator at the same time as Roenick.

*See id.* ¶¶ 23-24.  During the 2018 Olympic Games, Weir covered ice skating competitions and

gave "colorful commentary regarding the body parts of ice skaters."  *Id.* ¶ 24.  Roenick questioned

Flood about Weir's comments around this time.  *Id.*  In response, Flood told Roenick that "[Weir]

is gay and can say whatever."  *Id.*

The key events at issue here began when Roenick appeared on an episode of a Barstool

Sports podcast called "Spittin' Chiclets."  *Id.* ¶ 15.  The podcast was recorded on December 17,

2019 and released the next day.  *Id.* ¶ 16.  During the podcast, Roenick told a story about a recent

vacation he had taken with his wife and Tappen, who, in addition to being Roenick's coworker,

was also his friend.  *Id.*  He said that he "joked with fellow vacationers" that he would "go to bed"

with both his wife and Tappen, implying that the three individuals had sexual relations together.

*Id.* (internal quotation marks omitted).  Roenick clarified though that in reality this "is never going to happen." *Id.* (internal quotation marks omitted).

After the podcast aired, Flood sent Roenick a text message that said: "[Y]ou went too far. You may have crossed a line that there was no return from.  I'm really upset, and I need to take a couple days to figure out my next move." *Id.* ¶ 17 (internal quotation marks omitted).  On December 24, 2019, NBC issued a press release that said Roenick was indefinitely suspended without pay. *Id.*  Roenick posted a video-message to his Twitter account on January 11, 2020 in which he apologized for his comments.  He said: "I want to take this opportunity to apologize to NBC Sports, Kathryn Tappen, [and others] for some insensitive comments I made on a recent podcast.  I never meant to offend anyone, and I definitely went too far, and for that, I deeply regret it." *Id.* ¶ 18 (internal quotation marks omitted).  On February 6, 2020, Flood called Roenick and told him that he could not return to NBC because of his "inappropriate comments about fellow coworkers." *Id.* ¶ 19 (internal quotation marks omitted).  Neither NBC nor Flood gave Roenick an opportunity to "cure the act" that was "deemed sufficient for termination." *Id.*  Further, according to Roenick, his termination came shortly after he complained to Flood about Flood's allegedly "discriminatory and harassing statements" to Tappen. *Id.* ¶ 20.

Several months after NBC fired Roenick, on July 2, 2020, Weir and another NBC figure skating commentator, Tara Lipinski, participated in a video "spoof" of figure skating champion and Olympic bronze medalist Bradie Tennell. *Id.* ¶ 23.  Roenick briefly summarizes this skit in his Complaint, *id.*, and also attached to his Complaint a news article describing it in detail, *id.*, Exh. A.  The skit warrants discussion because it underlies some of Roenick's claims. *See id.* ¶¶ 62-63, 73-74.  In it, Lipinski and Weir, who were joined by actors Elizabeth Banks and John Michael Higgins, "used a vulgar term for a woman's groin and joked about a sexual affair." *Id.* ¶ 23

(emphasis omitted); *see also id.*, Exh. A.  Specifically, the video proceeded as follows.  Lipinski

introduced footage of Tennell from the Olympics and said "[n]ice camel spin into a toe loop,"

referring to two figure skating moves, neither of which Tennell performed in the clip.  *Id.*, Ex. A

(internal quotation marks omitted).  Higgins replied, "Yes, the camel toe.  Gail's very familiar with

that one."  *Id.* (internal quotation marks omitted).  Banks (who played a character named Gail in

the film *Pitch Perfect*) said, "I am, I am."  *Id.* (internal quotation marks omitted).  A few moments

later, Weir joked, "I'm really hoping we get to see [Tennell's] quads during this program."  *Id.*

(internal quotation marks omitted).  Banks replied, "Ah, easy, Johnny, your wife's sitting right

there."  *Id.* (internal quotation marks omitted).  Weir then said, "Gail, we're co-workers and

besties," to which Banks replied, "Oh I see[.] . . . Office romance, gotcha."  *Id.* (internal quotation

marks omitted).  The video received some criticism in the media, *see id.*, but NBC did not take

any "remedial action" against Lipinski or Weir, *id.* ¶ 23.

## B. Procedural History

Roenick initiated this case in the Supreme Court of the State of New York, New York

County, on July 17, 2020 against Flood, NBC Sports Group, NBC Sports Network, L.P.

("NBCSN"), NBCUniversal Media, LLC, Comcast Corporation ("Comcast"), and ten unknown

individuals.  *See id.* ¶¶ 5-7.  The Complaint alleges twelve causes of action: (1) breach of contract;

(2) breach of express oral contract; (3) breach of implied-in-fact contract; (4) violation of the

NYSHRL for sex and sexual orientation discrimination; (5) violation of the NYCHRL for gender

and sexual orientation discrimination/disparate treatment; (6) violation of the NYSHRL for hostile

work environment; (7) violation of the NYCHRL for hostile work environment; (8) violation of

the NYSHRL on the basis of retaliation for opposing discrimination and harassment based on sex

and sexual orientation; (9) violation of the NYCHRL on the basis of retaliation for opposing

harassment and discrimination based on gender and sexual orientation; (10) violation of the NYSHRL for aiding and abetting; (11) violation of the NYCHRL for aiding and abetting; and (12) violation of section 201-D of the New York Labor Law ("NYLL") on the basis of discrimination for engagement in political activities. *Id.* ¶¶ 32-138.

On September 3, 2020, Defendants removed the case to federal court on the basis of diversity jurisdiction. Dkt. 1 ¶¶ 8-17. This case was reassigned to the undersigned on October 5, 2020. Roenick voluntarily dismissed the Second and Third Causes of Action (breach of express oral contract and breach of implied-in-fact contract) on November 10, 2020. Dkt. 22.

Defendants filed a partial motion to dismiss on November 13, 2020. Dkt. 26. Specifically, Defendants seek to dismiss the Fourth and Fifth Causes of Action for discrimination, the Sixth and Seventh Causes of Action for hostile work environment, the Tenth and Eleventh Causes of Action for aiding and abetting, and the Twelfth Cause of Action for discrimination for engagement in political activities. Dkt. 27 ("Motion") at 1. Defendants also seek dismissal of all claims against NBCSN and Comcast. *Id.* at 21-25. Defendants did not move for dismissal of Roenick's First Cause of Action for breach of contract or his Eighth and Ninth Causes of Action for retaliation. *Id.* at 7 n.7. Roenick filed an opposition brief on November 30, 2020. Dkt. 29 ("Opposition"). In his Opposition, Roenick stated that he does not oppose dismissal of the Sixth, Seventh, and Twelfth Causes of Action or dismissal of all claims against NBCSN and Comcast. *Id.* at 7. Defendants filed a reply brief on December 7, 2020. *See* Dkt. 30.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro*, 807 F.3d at 544, it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III.  Discussion

Defendants argue that Roenick's claims for discrimination under the NYSHRL and the NYCHRL, hostile work environment under the NYSHRL and the NYCHRL, discrimination for engagement in political activities under the NYLL, and aiding and abetting under the NYSHRL and the NYCHRL cannot survive the pleading stage.  The Court addresses each of these claims in turn.

## A.  NYSHRL Discrimination

Although Roenick does not bring a discrimination claim pursuant to Title VII, "[c]laims under both Title VII and the NYSHRL, including sex . . . discrimination, are generally treated as 'analytically identical.'"  *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019)).  A discrimination claim under the NYSHRL thus is evaluated under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 65 (S.D.N.Y. 2015).  Under that framework, "a plaintiff must first make out a *prima facie* case of discrimination."  *Id.* at 66.  The *prima facie* case requires that a plaintiff show "(1) that [he] is a member of a protected class, (2) that [he] was qualified for the position [he] sought,

(3) that [he] suffered an adverse employment action, and (4) [that he] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). If the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "'to articulate some legitimate, nondiscriminatory reason' for the adverse action." *Lenart*, 131 F. Supp. 3d at 66 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant does that, then "the burden shifts back to the plaintiff to show pretext." *Id.* (internal quotation marks dismissed).

"At the motion to dismiss stage, however, a plaintiff 'is not required to plead a *prima facie* case under *McDonnell Douglas* . . . to defeat a motion to dismiss.'" *Farmer*, 473 F. Supp. 3d at 324 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Instead, "[f]or employment discrimination claims under . . . the NYSHRL, a plaintiff must 'plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.'" *Id.* (quoting *Vega*, 801 F.3d at 87). This standard also applies to claims based on sexual orientation. *See* N.Y. Exec. Law § 296. To survive a motion to dismiss, a plaintiff therefore must "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. "In other words, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

Roenick alleges that Defendants subjected him "to repeated unequal treatment, harassment and ultimately terminated [him]" because of his sex and sexual orientation. Compl. ¶ 61. The

crux of Roenick's discrimination claim is as follows: "Defendants would not have terminated [him] for relaying a story about [how] he had jokingly implied while on vacation that he was romantically involved with both his wife and a co-worker that was vacationing with them were he not a heterosexual male" or Defendants would have given him "an opportunity to cure the alleged breach of the public morals clause . . . were [Roenick] not a heterosexual male."  Opposition at 9. Defendants argue that Roenick's discrimination claims cannot survive because the Complaint does not plead facts supporting "an inference of discriminatory motivation."  Motion at 9 (quoting *Littlejohn*, 795 F.3d at 311).

"Absent direct evidence demonstrating discriminatory intent, '[a] plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees but must show [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self.'"  *Novick v. Vill. of Wappingers Falls, New York*, 376 F. Supp. 3d 318, 342 (S.D.N.Y. 2019) (alterations in original) (*quoting Kosack v. Entergy Enters., Inc.*, No. 14 Civ. 9605 (VB), 2019 WL 330870, at *6 (S.D.N.Y. Jan. 25, 2019)).  "[T]o be similarly situated in 'all material respects,' [a plaintiff] must 'show that similarly situated employees who went undisciplined engaged in comparable conduct.'"  *Id.* at 343 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).  A plaintiff also "must show that [his] co-employees were subject to the same performance evaluation and discipline standards."  *Graham*, 230 F.3d at 40. Although "[w]hat constitutes 'all material respects' . . . varies somewhat from case to case," it thus generally depends on "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness."  *Id.*

In support of his claims for discrimination, Roenick relies almost entirely on Defendants'

treatment of Lipinski and Weir, contending that they both were similarly situated to him.  Compl.
¶¶ 62 (identifying Lipinski as a "similarly situated female employee[]" who was not "subjected to
suspension or termination" despite engaging in "similar conduct"); 63 (identifying Weir as a
"similarly situated gay employee" who was "not disciplined" despite engaging in "similar
conduct").  Roenick says that "it is plausible that neither Lipinski nor Weir would have [been]
terminated had they made the same comments as [him] on a podcast, and it is plausible that
[Roenick] would not have been terminated for the same comments had he been a woman or not
heterosexual."  Opposition at 9.

The only fact alleged in the Complaint suggesting that Lipinski and Weir were similarly
situated to Roenick is that they too were "NBC commentators and personalities."  Compl. ¶ 23.
For the first time in his Opposition, Roenick says that it is "minimally plausible and consistent
with common sense" that Lipinski and Weir had "the same public morals clauses in their own
contracts" with NBC.  Opposition at 12.  This appears to be an attempt to allege that all three
individuals were "subject to the same performance evaluation and discipline standards."  *Graham*,
230 F.3d at 40.  Such a conclusory allegation (which was not pleaded in the Complaint) does little
to illustrate this.  Further, Roenick fails to show that his conduct was "of comparable seriousness"
to that of Lipinski and Weir.  *Id.*  And a comparison of the two incidents shows that Roenick's
behavior was categorically different.  Lipinski and Weir participated in a skit for NBC that
included jokes about the term "camel toe" and an "[o]ffice romance" between "besties."  Compl,
Exh. A; *see also id.* ¶ 23.  Roenick, on the other hand, used his "free time" outside of his role at
NBC to tell the hosts of a Barstool Sports podcast that he "jokingly implied" to fellow vacationers
that he had sex simultaneously with his NBC co-worker, Tappen, and his wife on multiple
occasions.   Opposition at 4; *see also* Compl. ¶ 16.   Roenick's public Twitter apology

10

approximately three weeks later—in which he apologized to Tappen and others "for some insensitive comments [he] made on a recent podcast" in which he "definitely went too far"—underscores the offensive nature and seriousness of these remarks.  Compl. ¶ 18.  Simply put, neither Lipinski nor Weir joked about having sex with a co-worker.  Roenick did.  Whether these two incidents were "of comparable seriousness," *Graham*, 230 F.3d at 40, is not even close.[1]

For further support, Roenick points to a single comment that Flood made in 2018 about Weir—*i.e.*, that Weir "is gay and can say whatever."  Compl. ¶¶ 24, 63, 73.  "[V]erbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff."  *Moore v. Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (quoting *Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 636 (S.D.N.Y. 2005)).  "However, stray remarks, even if made by a decision maker, do not constitute sufficient evidence to support a case of employment discrimination."  *Id.*  "In determining whether a comment should be considered a stray remark, courts consider who made the remark, when the remark was made in relation to the termination, the content of the remark, and the context in which the remark was made."  *Woodard v. TWC Media Sols.*, No. 09 Civ. 3000 (BSJ), 2011 WL 70386, at *7 (S.D.N.Y. Jan. 4, 2011), *aff'd sub nom.* 487 F. App'x 613 (2d Cir. 2012).  "Remarks are especially likely to

---

[1] In his Opposition, Roenick also argues that "as an alternative to [his] disparate treatment" theory of discrimination, his claim should survive because Lipinski and Weir's comments constitute circumstantial "evidence regarding Defendants' policies with respect to differences in protected categories."  Opposition at 13.  In other words, he says that because Defendants "endorse[d] a skit with inappropriate sexual humor involving sports commentators that [were] not heterosexual males" but decided to "punish similar comments" when he made them, it shows that sex or sexual orientation was a "motivating factor" in Defendants' termination decision. *Id.*  The Court struggles to see how this argument is meaningfully different than Roenick's contention that he was treated differently than Lipinski and Weir due to differences in sex and sexual orientation. *See* Opposition at 11-12.  For the same reasons discussed herein, this argument fails as well.

be 'stray' when made by a decision maker unrelated to the decision-making process temporally remote from the date of decision." *Id.*

That is the case here.  Flood allegedly made this single comment approximately two years before Roenick's termination.  *See* Compl. ¶ 24.  Courts have found comments made much closer to an adverse employment action to be stray remarks.  *See, e.g.*, *Moore*, 2016 WL 825001, at *9 (noting that the non-actionable comments occurred "at least months before [the plaintiff's] first suspension and nearly a year prior to [the plaintiff's] termination"); *Woodard*, 2011 WL 70386, at *7 (noting that the stray comments were made "approximately eight months before [the] [p]laintiff's termination").  Moreover, Roenick does not allege that Flood's single comment, which was not even about Roenick or heterosexual men, arose "in a context at all related to the decision to suspend and later terminate" him.  *Moore*, 2016 WL 825001, at *9.  Flood's alleged comment is thus a non-actionable stray remark and does nothing to support a discriminatory inference here.

Accordingly, the Court dismisses Roenick's Fourth Cause of Action for sex and sexual orientation discrimination pursuant to the NYSHRL.[2]

---

[2] In two paragraphs of the Complaint, contained in allegations relating to his Fourth and Fifth Causes of Action (*i.e.*, sex and sexual orientation discrimination), Roenick also alleges that Defendants violated the New York Civil Rights Law ("NYCRL"), "including but not limited to" NYCRL section 40-c.  Compl. ¶¶ 60, 71.  It is unclear whether Roenick brings this claim as a separate cause of action than his claim for discrimination under the NYSHRL.  *See, e.g.*, *Thorne v. Formula 1 Motorsports, Inc.*, No. 19 Civ. 1077 (JPO), 2019 WL 6916098, at *3 (S.D.N.Y. Dec. 19, 2019) ("The [NYSHRL] is composed of the New York Executive Law §§ 292 *et seq.* (which provides the substance of the law) and the New York Civil Rights Law §§ 40 *et seq.* (which provides for penalties).").  Section 40-c provides that "[n]o person shall . . . because of . . . sex . . . [or] sexual orientation . . . be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm, corporation or institution."  N.Y. Civ. Rights Law § 40-c.  "[F]acts sufficient to sustain a cause of action under [NYSHRL section] 296 will support a cause of action under [section] 40-c of the [NYCRL]."  *McGrath v. Arroyo*, No. 17 Civ. 1461 (NGG), 2019 WL 3754459, at *13 (E.D.N.Y. Aug. 8, 2019) (internal quotation marks omitted).  Because the Court dismisses Roenick's NYSHRL discrimination claim, and Roenick offers no argument for why his NYCRL claim should proceed in the absence of his NYSHRL claim, the Court likewise dismisses his NYCRL claim, to the extent it is brought as a separate cause of action.  *See Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of N.Y., Inc.*, 79 N.Y.2d 227, 234 (1992) (affirming summary

**B.  NYCHRL Discrimination**

The NYCHRL makes it unlawful for "an employer or an employee . . . because of . . .
gender [or] sexual orientation . . . to discharge from employment such person" or "[t]o discriminate
against such person . . . in terms, conditions or privileges of employment."  N.Y.C. Admin. Code
§ 8-107(1)(a).  "Claims brought under the NYCHRL are analyzed using the same framework as . . .
NYSHRL claims, but 'must be viewed independently and more liberally than their . . . state
counterpart[].'"  *Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734 (DLC), 2020 WL 1812741, at
*5 (S.D.N.Y. Apr. 9, 2020) (internal citation omitted) (quoting *Loeffler v. Staten Island Univ.
Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)).  Thus, the Court must analyze Roenick's NYCHRL
claim "separately and independently from any . . . state law claims."  *Mihalik v. Credit Agricole
Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

Despite the fact that the Court must construe this provision of the NYCHRL more broadly
than the NYSHRL, Roenick offers no independent argument for why this cause of action should
survive if his NYSHRL claim does not.  *See* Opposition at 17 ("[I]f Plaintiff's [NYSHRL] claims
withstand a motion to dismiss, so should his NYCHRL claims.").  Still, construing Roenick's
NYCHRL claim more liberally and broadly than his NYSHRL claim, the Court concludes this
claim also must be dismissed.  As discussed above, the Complaint fails to allege any facts
suggesting that Roenick's termination was related to his sex or sexual orientation.  *See Carter v.
Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *5 (S.D.N.Y. Jan. 20, 2015) (dismissing a
NYCHRL claim because the complaint made "only conclusory allegations and d[id] not provide
any indication of how any alleged adverse or dispreferential employment action was connected to

---

judgment on the plaintiffs' claim based on section 40-c of the NYCRL for the "same reasons" as
the plaintiffs' claim based on section 296 of the New York Executive Law).

[the] [p]laintiff's gender or age").   In short, Roenick's "conclusory allegations of disparate treatment discrimination are insufficient to nudge [his] claims across the line from conceivable to plausible to proceed, even under the more liberal standard afforded by the NYCHRL." *Id.* (internal quotation marks and citation omitted).

The Court thus dismisses Roenick's Fifth Cause of Action for gender and sexual orientation discrimination pursuant to the NYCHRL.

### C.  Hostile Work Environment and Discrimination for Engagement in Political Activities

Roenick also brings claims for hostile work environment under the NYSHRL (Cause of Action Six), hostile work environment under the NYCHRL (Cause of Action Seven), and discrimination for engagement in political activities under the NYLL (Cause of Action Twelve). Compl. ¶¶ 79-92, 130-138.   Roenick "does not oppose dismissal of [his] Sixth, Seventh, and Twelfth causes of action."   Opposition at 18.   The Court thus finds that Roenick has abandoned these claims and dismisses the Sixth, Seventh, and Twelfth Causes of Action.

### D.  Aiding and Abetting

Roenick also alleges that Flood and others[3] "aided[] and abetted the retaliation and discrimination" he faced in violation of the NYSHRL and the NYCHRL.   Compl. ¶ 9; *see also id.* ¶¶ 108-129.   Under both New York Executive Law section 296(6) and New York City Administrative Code section 8-107(6), "an individual employee may be held liable for aiding and abetting discriminatory conduct."   *Farmer*, 473 F. Supp. 3d at 337.   Both laws provide that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" under the respective laws.   N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6).   The "same standards of analysis" apply to aiding and abetting

---

[3] Roenick brings these claims against the ten unidentified individual Defendants too.

claims under the NYSHRL and the NYCHRL. *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004). "To make out an aiding and abetting claim, the pleadings must allege that '[defendant] actually participate[d] in the conduct giving rise to a discrimination claim.'" *Farmer*, 473 F. Supp. 3d at 337 (alterations in original) (internal quotation marks omitted); *accord Feingold*, 366 F.3d at 158; *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999) ("[E]mployees may be held personally liable under the [NYSHRL] and the NYCHRL . . . if they participate in the conduct giving rise to the discrimination claim.").

Defendants argue that the Court must dismiss Roenick's aiding and abetting claims because Roenick does not state a claim for discrimination. Motion at 17. Roenick does not oppose the contention that these claims can only survive if he "has demonstrated plausible discrimination claims under the NYSHRL and NYCHRL." Opposition at 18. Because Roenick's Fourth, Fifth, Sixth, and Seventh Causes of Action are dismissed, the Court agrees that there is "no predicate for aiding and abetting liability" with respect to Roenick's claims for sex and sexual orientation discrimination or hostile work environment. *Farmer*, 473 F. Supp. 3d at 338; *accord Stinnett v. Delta Air Lines, Inc.*, No. 18 Civ. 2704 (DLI), 2019 WL 1493224, at *9 (E.D.N.Y. Mar. 31, 2019) (dismissing aiding and abetting claims under the NYSHRL and the NYCHRL because the court dismissed the plaintiff's "primary discrimination claims" under those statutes), *aff'd*, 803 F. App'x 505 (2d Cir. 2020).

However, Defendants have not moved to dismiss Roenick's claims for retaliation under the NYSHRL and the NYCHRL. *See* Compl. ¶¶ 93-107; *see also* Motion at 25. These claims are based on the allegation that Defendants terminated Roenick "[s]hortly after" Roenick complained to Flood about Flood's "discriminatory and harassing statements made to Tappen based on Tappen's sex/gender." Compl. ¶ 20; *see also id.* ¶¶ 111, 122. Although Flood "cannot aid or abet

15

his own conduct," *Farmer*, 473 F. Supp. 3d at 337, the Complaint sufficiently alleges that NBC retaliated against Roenick and that Flood aided and abetted such conduct.  *See* Compl. ¶¶ 20, 94, 102, 111, 122.  Accordingly, the Court denies Defendants' motion to dismiss the NYSHRL and the NYCHRL aiding and abetting claims with respect to retaliation.

### E.  Defendants NBCSN, Comcast, and NBC Sports Group

Defendants argue that the Complaint "does not provide any specific factual allegations with respect to NBCSN or Comcast that could plausibly subject either entity to liability under any applicable theory."  Motion at 22.  Roenick "does not oppose dismissal of NBCSN or Comcast from this action."  Opposition at 18.  Accordingly, the Court dismisses all claims against NBCSN and Comcast.

With regard to Defendant NBC Sports Group, Defendants submitted in connection with this case's removal from state court a declaration from Erik Bierbauer, Vice President of Litigation for NBCUniversal Media, LLC, in which Mr. Bierbauer stated that NBC Sports Group "is not a corporate entity, but rather a division of NBCUniversal Media, LLC."  Dkt. 3 ¶ 3.  Roenick has not argued otherwise.  Within one week of the filing of this Opinion and Order, Roenick shall either voluntarily dismiss NBC Sports Group from this action or submit a letter, not more than three pages in length, showing cause why the Court should not dismiss all claims against this Defendant.

### IV.  Conclusion

For these reasons, Defendants' motion to dismiss is granted in part and denied in part.  The Court dismisses Roenick's Fourth, Fifth, Sixth, Seventh, and Twelfth Causes of Action.  Because Roenick already voluntarily dismissed the Second and Third Causes of Action, Dkt. 22, this means that the following Causes of Action remain: breach of contract (First Cause of Action); retaliation

under the NYSHRL (Eighth Cause of Action); retaliation under the NYCHRL (Ninth Cause of Action); aiding and abetting retaliation under the NYSHRL (Tenth Cause of Action); and aiding and abetting retaliation under the NYCHRL (Eleventh Cause of Action).  The Court also dismisses all claims against Defendants NBCSN and Comcast.

Discovery shall proceed according to the Amended Case Management Plan and Scheduling Order entered on May 6, 2021.  *See* Dkt. 36.  Fact discovery shall be completed no later than September 6, 2021, and expert discovery shall be completed no later than October 21, 2021.  *Id.* The parties must submit a joint letter updating the Court on the status of this case by October 28, 2021.  *See id.*

The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 26 and to terminate NBC Sports Network, L.P. and Comcast Corporation as Defendants in this action.

SO ORDERED.

Dated: June 9, 2021
       New York, New York

_____
JOHN P. CRONAN
United States District Judge